OPINION
{¶ 1} Although originally placed on our accelerated calendar, we have elected, pursuant to Local Rule 12(5), to issue a full opinion in lieu of a judgment entry.
 {¶ 2} Appellant Barbara Williams ("Williams") brings this appeal from the judgment of the Court of Common Pleas of Seneca County, Juvenile Division, terminating her parental rights.
 {¶ 3} Jacqueline Distafano ("Jacqueline") was born on March 12, 2005, to Williams. At the time of her birth, Jacqueline tested positive for cocaine. She was immediately removed from her mother's care and placed in the temporary custody of Seneca County Department of Job and Family Services ("the Agency"). The Agency filed a complaint on March 15, 2005, alleging that Jacqueline was an abused, neglected and dependent child. A hearing was set for April 15, 2005, but was continued to allow genetic testing to determine paternity to be completed. On May 27, 2005, Carl Pauley ("Pauley") was adjudicated as the father of Jacqueline and Jacqueline was found to be dependent. The trial court entered disposition continuing temporary care on that same day. On August 12, 2005, a review was held. The trial court determined that Jacqueline could not be returned to either parent due to their failure to comply with the case plan. A second review was held on November 9, 2005. The trial court again determined that Jacqueline could not be returned to her parents due to Williams' continued substance abuse issues and Pauley's continued incarceration.
 {¶ 4} On January 11, 2006, the Agency filed a motion for permanent custody of Jacqueline. The basis for this motion was Williams' continued failure to comply with the case plan, Pauley's continued incarceration for 18 months, and the foster parent's desire to adopt the child. On March 9, 2006, the Guardian Ad Litem ("GAL") filed his report. A hearing on the motion was held on March 16, 2006. At the hearing, Pauley voluntarily surrendered his parental rights to Jacqueline. Williams did not appear at the hearing, though her counsel was present and participated. The Agency presented the testimony of witnesses responsible for collecting urine specimens and testing them for drugs, a psychologist, Williams' probation officer, the intake social worker who investigated the initial complaint, the ongoing social worker in charge of Williams' case, and the GAL. After hearing the testimony, the trial court ruled that Williams' parental rights were terminated. The judgment entry including findings of fact and conclusions of law was filed on March 23, 2006. Williams appeals from this judgment and raises the following assignments of error.
[The Agency] failed its duty to use reasonable case planningand diligent efforts at reunification with the parent.
 The trial court's decision to terminate [Williams'] parentalrights and grant permanent custody to [the Agency] is against themanifest weight of the evidence.
 The trial court's decision to deny [Williams'] counsel'srequest for a continuance was an abuse of discretion.
 {¶ 5} The first assignment of error claims that the Agency failed to make diligent efforts at reunification of the family. The initial case plan was filed on April 5, 2005. Under the case plan, Williams was required to have a substance abuse evaluation, to follow the recommendations of the counselors, to cease using illegal substances, to submit to random drug screenings, to receive counseling, to seek employment, and to visit with Jacqueline in order to form a bond. The Agency provided Williams with referrals to various counselors and employment assistance. This case plan was signed by Williams. Thereafter, visitation with the parties was terminated due to Jacqueline's health issues. The parties and the trial court agreed that this period of no visitation would not be held against Williams. The trial court permitted visitation between Jacqueline and Williams to resume on August 12, 2005. In order to visit, Williams needed to complete sleep apnea training, for which the Agency agreed to pay, and Williams needed to have a clean drug screen. At no time did Williams enroll in the sleep apnea class. Williams also did not contact the Agency at any time to set up a time for visitation with Jacqueline.
 {¶ 6} On July 8, 2005, the case plan was modified to include Pauley. The only progress made by Williams between April 5 and July 8, 2005, was that she had signed the releases of information. Tr. 116. Williams did meet with the social worker on July 8 and signed the modified case plan. Williams informed the social worker that she was no longer obtaining counseling at Firelands and had not yet enrolled in any further counseling at that time. After the meeting, Williams went to her psychological evaluation. The social worker attempted several times to contact Williams, but was unable to do so due to Williams having moved without leaving a forwarding address. Id. at 121. Williams moved to the Toledo area eventually and asked for services in that area. The Agency found a chemical dependency program for her and agreed to pay for it. Williams did not attend. Id. at 125-26.
 {¶ 7} In December 2005, Williams again asked for assistance and the Agency again gave Williams the contact information to the programs and offered to pay for the treatment. Williams still did not attend. Id. at 126, 129. At the time of the hearing, Williams had not participated in any of the counseling required by the case plans. Id. at 129. The social worker testified that in the year between the time Jacqueline entered foster care until March 23, 2006, Williams had only signed the releases and obtained the psychological evaluation. Id. at 130. Williams had made no progress towards completion of the case plan. Id. The social worker testified that she had offered transportation, had offered to pay for her drug screens, paid for her psychological evaluation, referred her to several different treatment centers and offered to pay for those. Id. at 131. Williams had not taken advantage of any of the offers. Id. Additionally Williams told the social worker she had no intention of seeking chemical dependency treatment or attending parenting classes. Id. at 135. Based upon a review of the record and the testimony of the social worker, the trial court could rationally conclude that the Agency made reasonable and diligent efforts to assist Williams in completing the case plan. The first assignment of error is overruled.
 {¶ 8} Williams next claims that the trial court's judgment to terminate parental rights is against the manifest weight of the evidence.
(B)(1) Except as provided in division (B)(2) of this section,the court may grant permanent custody of a child to a movant ifthe court determines at the hearing held pursuant to division (A)of this section, by clear and convincing evidence, that it is inthe best interest of the child to grant permanent custody of thechild to the agency that filed the motion for permanent custodyand that any of the following apply:
 (a) The child is not abandoned or orphaned or has not been inthe temporary custody of one or more public services agencies orprivate child placing agencies for twelve or more months of aconsecutive twenty0-two month period ending on or after March 18,1999, and the child cannot be placed with either of the child'sparents within a reasonable time or should not be placed with thechild's parents.
* * *
(D) In determining the best interest of a child at a hearingheld pursuant to division (A) of this section * * *, the courtshall consider all relevant factors, including, but not limitedto the following:
 (1) The interaction and interrelationship of the child withchild's parents, siblings, relatives, foster caregivers andout-of-home providers, and any other person who may significantlyaffect the child;
 (2) The wishes of the child, as expressed directly by thechild or through the child's guardian ad litem with due regardfor the maturity of the child;
 (3) The custodial history of the child, including whether thechild has been in the temporary custody of one or more publicchildren services agencies * * * for twelve or more motnhs of aconsecutive twenty-two month period ending on or after March 18,1999;
 (4) The child's need for a legally secure permanent placementand whether that type of placement can be achieved without agrant of permanent custody to the agency
 (5) Whether any of the factors in divisions (E)(7) to (11) ofthis section apply in relation to the parents and child. For thepurposes of this division, a child shall be considered to haveentered the temporary custody of an agency on the earlier of thedate the child is adjudicated pursuant to [R.C. 2151.28] or thedate that is sixty days after the removal of the child fromhome.
 (E) In determining at a hearing held pursuant to division (A)of this section * * * whether a child cannot be placed witheither parent within a reasonable period of time or should not beplaced with the parents, the court shall consider all relevantevidence. If the court determines, by clear and convincingevidence * * * that one or more of the following exist as to eachof the child's parents, the court shall enter a finding that thechild cannot be placed with either parent within a reasonabletime or should not be placed with either parent:
 (1) Following the placement of the child outside the child'shome and notwithstanding reasonable case planning and diligentefforts by the agency to assist the parents to remedy theproblems that initially caused the child to be placed outside thehome, the parent has failed continuously and repeatedly tosubstantially remedy the conditions causing the child to beplaced outside the child's home. In determining whether theparents have substantially remedied those conditions, the courtshall consider parental utilization of medical, psychiatric,psychological, and other social and rehabilitative services andmaterial resources that were made available to the parents forthe purpose of changing parental conduct to allow them to resumeand maintain parental duties.
 (2) Chronic mental illness, chronic emotional illness, mentalretardation, physical disability, or chemical dependency of theparent that is so severe that it makes the parent unable toprovide an adequate permanent home for the child at the presenttime and, as anticipated, within one year after the court holdsthe hearing * * *;
* * * (4) The parent has demonstrated a lack of commitmenttoward the child by failing to regularly support, visit, orcommunicate with the child when able to do so, or by otheractions showing an unwillingness to provide an adequate permanenthome for the child.
R.C. 2151.414.
 {¶ 9} As discussed above, there was substantial and undisputed evidence presented that Williams has not enrolled in a counseling program for her substance abuse problem. Additional evidence was presented that Williams was still using illegal substances as late as February 2006. The social worker and the psychologist both testified that Williams had a substance abuse problem for which she refused to take responsibility. Instead, Williams blamed everyone else for her problems and went so far as to make up outlandish tales as to why her drug screens tested positive for cocaine. On more than one occasion she was caught attempting to cheat on a drug screen. She also claimed to have cheated on one screen that came back positive. Most damaging is the social worker's testimony that Williams told her in February 2006 that she neither intended to seek counseling for her drug usage nor to attend parenting classes. This testimony indicates unwillingness on the part of Williams to comply with the court ordered case plan and to make the lifestyle changes necessary for her to raise Jacqueline. Thus, the first and second factors of R.C. 2151.414(E) apply.
 {¶ 10} Besides the drug usage, testimony was presented that Williams had not visited with Jacqueline once since the Agency assumed custody of the child. Williams did not even ask about setting up visitation after the trial court granted her visitation rights once Jacqueline's health stabilized. According to the testimony of the social worker, Williams did not once ask about Jacqueline's medical condition, did not send her a card or gift, and provided no support for Jacqueline. On more than one occasion, Williams would fail to appear for either a hearing or a meeting with a social worker or counselor. Williams also failed to keep her address and phone number current with the Agency, which made her unavailable throughout much of the year. The only times her social worker saw Williams would be at the hearings that Williams attended. At those meetings, Williams would always promise to work on the case plan, but never followed through. This failure to demonstrate a commitment to Jacqueline is addressed in the fourth factor set forth in R.C. 2151.414. Based upon this undisputed evidence, a reasonable person could conclude that Jacqueline cannot be placed with her mother within a reasonable time and that it would be in her best interests for permanent custody to be granted to the Agency.[1] The second assignment of error is overruled.
 {¶ 11} Finally, Williams argues that the trial court erred in denying her motions for a continuance. "Continuances shall be granted only when imperative to secure fair treatment for the parties." Juv.R. 23.
A decision by the trial court to deny a motion for continuanceis within the sound discretion of the trial court and should notbe reversed absent a showing of abuse of that discretion. * * *In evaluating the discretion of a lower court, a reviewing courtmust be circumspect. The fact that the reviewing court mightreach a different conclusion than did the lower court does notestablish abuse of discretion. * * * Rather, the reviewing courtmust demonstrate that the lower court's exercise of discretionwas "not justified by, and clearly against, reason and theevidence; * * * such action must plainly appear to effect aninjustice to the appellant."
 In re Miller, 3rd Dist. No. 2-04-02, 2004-Ohio-3023 at ¶7.
 {¶ 12} Here, the record indicates that on more than one occasion, Williams had failed to appear at a hearing. Although her attorney expected her to be at this hearing, she did not appear at the 9:00 a.m. start time. She also did not provide any explanation as to why she was not present. Ninety minutes later, she notified her attorney that she was not present due to car trouble. She also claimed that she had driven home, fallen, and was injured. At a subsequent phone call she claimed she was hospitalized. Later she claimed to have a lump on her back needing medical attention. Finally, she called the court to state that she was going to the hospital. Given the numerous and varied excuses, Williams' prior failures to appear at court hearing, and the fact that she was represented, the trial court did not abuse its discretion in denying the continuance. The third assignment of error is overruled.
 {¶ 13} The judgment of the Court of Common Pleas of Seneca County, Juvenile Division, is affirmed.
Judgment affirmed.
 SHAW and ROGERS, JJ., concur.
[1] As noted earlier, father had voluntarily surrendered his parental rights.