[Cite as *In re R.R.*, 2021-Ohio-2369.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN THE MATTER OF: | JUDGES:<br>Hon. Craig R. Baldwin, P.J. |
| R.R., C.G., C.G., R.G., & J.G. | Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J. |
| | Case Nos. 2021CA00011, 2021CA00012,<br>2021CA00013, 2021CA00014, &<br>2021CA00015 |
| | O P I N IO N |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Stark County Court of<br>Common Pleas, Juvenile Division, Case<br>Nos. 2020JCV835, 2020JCV836,<br>2020JCV837, 2020JCV838, &<br>2020JCV839 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | July 7, 2021 |

APPEARANCES:

| | |
|---|---|
| For Plaintiff-Appellee | For Mother Defendant-Appellant |
| BRANDON J. WALTENBAUGH<br>Stark County Department<br>Of Jobs and Family Services<br>402 – 2nd Street, S.E.<br>Canton, Ohio 44702 | BERNARD L. HUNT<br>2395 McGinty Road, N.W.<br>North Canton, Ohio 44720 |

*Hoffman, J.*

{¶1} Defendant-appellant R.R. (hereinafter "Mother") appeals the judgment entered by the Stark County Common Pleas Court, Juvenile Division, finding her child R.R. (DOB 4/27/03) to be abused, finding her children C.G. (DOB 1/15/11), C.G. (DOB 1/5/12), R.G. (DOB 4/26/13) and J.G. (DOB 7/16/17) to be neglected, and awarding temporary custody of all five children to Plaintiff-appellee Stark County Job and Family Services (hereinafter "JFS").

STATEMENT OF THE FACTS AND CASE

{¶2} JFS became involved with Mother and the children on February 5, 2020. Prior to this time, the Canton Police Department had numerous interactions with Mother's home based on complaints of her children "running amok," starting fights, stealing, going missing, and being found by the park police near a river in cold weather conditions. Tr. (11/4/20) 20. JFS became involved in February of 2020, based on complaints of deplorable conditions in the home, lack of supervision of the children, the presence of an uncle in the home who was using drugs, and Mother's abuse of prescription medications. Mother was uncooperative with the caseworker's attempts to investigate and address these concerns.

{¶3} Between February 5, 2020, and May 21, 2020, JFS received six additional reports of concerns with the family. On May 21, 2020, the caseworker received a report R.G. was punched and stomped on by his father. The caseworker also received a video in which R.R. told Mother she had been sexually abused by the father of the younger four children, and a video showing deplorable conditions of the home.

{¶4}   On May 21, 2020, the caseworker asked Canton police to accompany her to the home to attempt to interview the children.  JFS intended to remove the children from the home pursuant to Juv. R. 6 if Mother would not allow the caseworker to speak with the children.

{¶5}   When the caseworker and police arrived, the home was very quiet.  Police found this unusual because normally the children are loud and running around.  Police were also concerned Mother was not home, as the vehicle which normally was parked at the home was absent, and normally when they arrived at the house, Mother came to the porch to yell at them. The porch was stacked with mounds of garbage.  Police announced their presence and knocked on the door.  The door was ajar, and when police knocked, the door partially opened.  A strong odor of feces, urine, spoiled food, and garbage came from the home when the door opened.

{¶6}   Canton police practice is to enter a home if the door is either open or ajar and they get no response upon identifying themselves.  They do this to assure the safety of persons inside, as it is unusual to find a door left open or ajar in the area, and police have found persons overdosed, passed out, stabbed, etc. in similar circumstances. Police entered the home while the caseworker remained outside.  Mother and the children eventually came downstairs.  Mother initially waved the caseworker inside when the caseworker indicated she wanted to speak to the children.  However, Mother changed her mind and interfered with the caseworker's attempts to talk with the children.  Mother was arrested and the children were taken into custody.

{¶7} The inside of the home was deplorable. Throughout the home, police found garbage and feces, dirty diapers, rotten food which had attracted flies, and a rabbit hopping from room to room. The plumbing on the first floor was not functional.

{¶8} R.R. was not living in the home at the time, but was pregnant and residing with her boyfriend's family. R.R. underwent an assessment with Carrie Schnirring, a sexual abuse and trauma expert. R.R. told Ms. Schnirring Mother's boyfriend, who is the father of the other four children, had been physically violent to Mother and the children, and had sexually abused R.R. R.R. stated the sexual abuse began when she was six years old, and continued to the age of 15. R.R. stated she told Mother about the sexual abuse when she was 13 years old, yet Mother allowed the boyfriend to stay in the home. Ms. Schnirring found R.R.'s claims of sexual abuse to be credible, and diagnosed R.R. with PTSD and adjustment disorder with depression and anxiety based on the trauma she experienced in the home.

{¶9} JFS filed a complaint on May 22, 2020, alleging the children were dependent, neglected, and/or abused, and seeking temporary custody of the children. Following a shelter care hearing, the children were placed in the temporary custody of JFS. The case was dismissed due to an inability to comply with the statutory time mandates, and refiled in August of 2020.

{¶10} Appellant filed a motion in limine, arguing evidence taken from the home should be excluded because police and the caseworker entered the home without a warrant in violation of the Fourth Amendment. The motion proceeded to a hearing before a magistrate on November 4, 2020. The magistrate found exigent circumstances existed for the warrantless entry and denied the motion in limine. The case proceeded to a

hearing on the complaint on November 10, 2020 before a different magistrate. Following the hearing, the magistrate upheld the prior ruling on the motion in limine, found R.R. to be abused and the remaining children to be neglected, and continued temporary custody in JFS.

**{¶11}** Mother filed objections to the reports of the magistrate, arguing the magistrate erred in overruling her motion in, and the magistrate erred in finding the children to be abused and neglected. Upon hearing objections to the magistrate's report, the trial court overruled the objections and entered judgment in accordance with the report of the magistrate. It is from the February 3, 2021 judgment entered by the Stark County Common Pleas Court, Juvenile Division, Mother prosecutes this appeal, assigning as error:

I. THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S OBJECTION TO THE MAGISTRATE'S DENIAL OF APPELLANT'S MOTION IN LIMINE.

II. THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S OBJECTION TO THE MAGISTRATE'S DECISION IN FINDING R.R. ABUSED AND THE REST OF THE CHILDREN NEGLECTED, IN VIOLATION OF THE SIXTH AMENDMENT OF THE UNITED STATES AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.

I.

**{¶12}** Mother argues the trial court erred in overruling her motion in limine to exclude all evidence taken from her home on the basis the police and caseworker entered her home without a warrant in violation of the Fourth Amendment, and no exigent circumstances existed to justify the entry.

**{¶13}** In the trial court, JFS argued the exclusionary rule does not apply to dependency, neglect, and abuse actions, which are civil in nature. We agree.

**{¶14}** While this appears to be a case of first impression in Ohio, other states have uniformly held the Fourth Amendment's exclusionary rule does not apply in child protection cases. *State of N.M. ex rel. CYFD v. Michael T.*, 143 N.M. 75, 2007-NMCA-163, 172 P.3d 1287 (purpose of the exclusionary rule is not served in abuse and neglect proceeding whose focus is the health and safety of innocent children); *People ex rel. A.E.L.*, 181 P.3d 1186 (Colo. 2008) (societal costs of applying exclusionary rule would exceed any deterrent effect exclusion would have on the department or the police in investigating a child welfare issue); *State ex rel. A.R. v. C.R.,* 1999 UT 43, 982 P.2d 73 (Fourth Amendment exclusionary rule is inapplicable to child protection proceedings); *Idaho Dept. of Health & Welfare v. Doe*, 150 Idaho 103, 113, 244 P.3d 247, 257 (interests at stake in child protective proceedings are not the same as liberty interest at stake in criminal prosecutions, and purpose of the exclusionary rule is not served in abuse and neglect proceedings); *Matter of Diane P.*, 110 A.D.2d 354, 356, 494 N.Y.S.2d 881, 884 (1985) (exclusionary rule should not be utilized in a child protective proceeding); *In re Corey P.,* 269 Neb. 925, 935, 697 N.W.2d 647, 655 (Fourth Amendment exclusionary rule is inapplicable in child protection proceedings); *State ex rel. Dept. of Human Services v.*

*W.L.P.,* 345 Or. 657, 669, 202 P.3d 167 (exclusionary rule does not apply in juvenile dependency proceedings).

**{¶15}** We agree with the reasoning of the Utah Supreme Court, which held as follows in concluding the exclusionary rule should not apply in child protection proceedings:

Applying the principles enunciated in *Calandra* and its progeny, we conclude that the Fourth Amendment exclusionary rule is inapplicable to child protection proceedings. As described above, it is well established that the deterrence of unreasonable searches and seizures is the principal purpose of the exclusionary rule and, as such, governs its application. See 1 Wayne R. LaFave, Search and Seizure § 1.1(f), at 18–20 (3d ed.1996) (citing *I.N.S. v. Lopez–Mendoza,* 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984); *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976); Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974)). "The rule is calculated to prevent, not to repair. Its purpose is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it." *Elkins v. United States*, 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), quoted in 1 LaFave, § 1.1(f), at 18. Conversely, the exclusionary rule is " 'powerless to deter invasions of constitutionally guaranteed rights where the police either have no interest in prosecuting or are willing to forego

successful prosecution in the interest of serving some other goal.' " 1 LaFave, § 1.2(b), at 30 (quoting *Terry v. Ohio*, 392 U.S. 1, 14, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

In light of the purpose of the exclusionary rule, as well as the State's interest in protecting children, it is improper to exclude evidence discovered during a warrantless search in subsequent child protection proceedings. State officials confronting the possibility of child abuse or neglect— emergencies that occasionally lead to child protection proceedings—do not ordinarily seek to uncover incriminating evidence during the warrantless searches incidental to these investigations. There is little incentive to violate the Fourth Amendment because these officers do not usually act with the object of obtaining evidence for criminal prosecution.

There appears to be little likelihood that any substantial deterrent effect on unlawful police intrusion would be achieved by applying the exclusionary rule to child protection proceedings. Whatever deterrent effect there might be is far outweighed by the need to provide for the safety and health of children in peril. Although it is difficult to empirically document the impact of the exclusionary rule, see *Janis*, 428 U.S. at 446, 96 S.Ct. 3021, the very paucity of exclusionary rule cases in the context of child welfare proceedings indicates that allegations of improperly obtained evidence in such proceedings are rare. Thus, extension of the exclusionary rule to such cases does not promise to "add significant protection to ... Fourth Amendment rights." *Lopez–Mendoza*, 468 U.S. at 1046, 104 S.Ct. 3479.

{¶16} *State ex rel. A.R. v. C.R.,* 1999 UT 43, 982 P.2d 73, ¶¶ 19-21.

{¶17} Further, with the exception of the right to counsel, Ohio courts have generally not applied criminal constitutional protections to child protection proceedings, which are civil in nature. This Court and other Ohio courts have found the protection afforded by the Confrontation Clause does not apply in dependency, neglect and abuse proceedings in Juvenile Court. *In re Yeager/Reardon Children*, 5th Dist. Tuscarawas No. 2001 AP 03 0024, 2002-Ohio-777; *In re Burchfield*, 51 Ohio App.3d 148, 154, 555 N.E.2d 325, 331 (4th Dist. Athens 1988); *In re M.W.*, 8th Dist. Cuyahoga No. 83390, 2005-Ohio-1302, ¶ 3. Terminating parental rights does not constitute double jeopardy where the parent has previously been convicted of child endangering based on the same conduct. *In re Jones*, 9th Dist. Summit 20766, 2002-Ohio-1748. Due process does not require a parent in a termination of parental rights proceeding be afforded the right to a delayed appeal. *In re B.C.,* 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 27.

{¶18} Accordingly, we find the trial court did not err in overruling Mother's motion in limine because the exclusionary rule does not apply in the instant dependency, neglect, and abuse proceeding in Juvenile Court. The first assignment of error is overruled.

II.

{¶19} In her second assignment of error, Mother argues the court erred in admitting into evidence the report of Carrie Schnirring, the expert who conducted the sexual abuse trauma evaluation of R.R., because the report included hearsay statements by R.R. which constituted inadmissible hearsay and violated Mother's right to confront witnesses against her.

**{¶20}** Mother did not object to the admission of the report, nor to Ms. Schnirring's testimony concerning the statements of the child, at either the hearing before the magistrate or in her objections to the magistrate's report. Mother has therefore waived all but plain error. The plain error doctrine is applicable in civil cases only where the error "seriously affects the basic fairness, integrity, or public reputation of the judicial process." *Lowder v. Domingo*, 5th Dist. Stark No. 2016CA00043, 2017-Ohio-1241, ¶ 21.

**{¶21}** We find no plain error in the admission of the report and Ms. Schnirring's testimony concerning what she was told by R.R. This Court has previously held the Confrontation Clause does not apply in dependency, neglect and abuse proceedings in Juvenile Court. *In re Yeager/Reardon Children*, 5th Dist. Tuscarawas No. 2001 AP 03 0024, 2002-Ohio-777.

**{¶22}** As for Mother's claim the report constituted inadmissible hearsay, Evid. R. 803(4) provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(4) Statements for Purposes of Medical Diagnosis or Treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

{¶23} Mother stipulated to Ms. Schnirring's certification as an expert witness in child sexual abuse and trauma. Ms. Schnirring testified the goal of a sexual abuse assessment is to obtain as much information as possible about trauma which might have occurred, in order to use the information provided to come up with a diagnosis and make treatment recommendations. She further testified any statements made to her by the child are used for the purposes of medical evaluation. Tr. (11/10/20) 31. We find had Mother objected, most likely the report would have been admitted pursuant to Evid. R. 803(4).

{¶24} Further, while R.R. was found to be abused based on the information she provided to Ms. Schnirring, the other children were found to be neglected based primarily on the observations of the police and the caseworker of the conditions existing in Mother's home. Although R.R. had moved out of the home and into her boyfriend's family home at the time, even in the absence of the report of the sexual abuse and physical abuse in the household, R.R. would likely have been found to be dependent or neglected by Mother based solely on the conditions which existed in the home provided by Mother, and temporary custody awarded to JFS along with her half-siblings.

{¶25} The second assignment of error is overruled.

{¶26} The judgment of the Stark County Common Pleas Court, Juvenile Division is affirmed.


By: Hoffman, J.

Baldwin, P.J. and

Wise, John, J. concur