[Cite as *In re G.R.*, 2022-Ohio-3779.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

IN RE:

    G.R.,

CASE NO. 13-22-03

ADJUDICATED ABUSE/NEGLECTED/
DEPENDENT CHILD.

**O P I N I O N**

[KIMBERLY W. - APPELLANT]
[JAMES R. - APPELLANT]

Appeal from Seneca County Common Pleas Court
Juvenile Division
Trial Court No. 22150081

**Judgment Affirmed**

**Date of Decision:  October 24, 2022**

APPEARANCES:

    *Wesley R. True* for Appellant, Kimberly W.

    *Jennifer L. Kahler* for Appellant, James R.

    *Victor H. Perez* for Appellee

**WILLAMOWSKI, J.**

{¶1} Father-appellant James R. ("James") and mother-appellant Kimberly W. ("Kimberly") each appeal from the judgment of the Court of Common Pleas of Seneca County, Juvenile Division, finding that G.R. was an abused, neglected, and dependent child and placing the child in the temporary custody of the Seneca County Department of Job & Family Services ("the Agency"). For the reasons set forth below, the judgment of the trial court is affirmed.

{¶2} In September 2021, G.R. was born to Kimberly and James. Doc. 1. The next day, the Agency was notified that both Kimberly and G.R. had tested positive for methamphetamine. Doc. 1. When questioned by a representative from the Agency, Kimberly admitted using drugs. Doc. 1. Kimberly and James had a history with the Agency when a prior child, born in September 2019, was removed from the home in October 2019 and adjudicated as dependent. Doc. 1. Both Kimberly and James tested positive for methamphetamines with James also testing positive for oxycodone. Doc. 1. Legal custody of the prior child was awarded to a relative in October of 2020. Doc. 1.

{¶3} On September 8, 2021, the Agency filed a complaint alleging that G.R. was an abused child, a neglected child, and a dependent child. Doc. 1. The Agency also filed a motion for an ex parte order placing G.R. in the temporary custody of the Agency. Doc. 2. The trial court granted an ex parte shelter care order that same

day. Doc. 3. A probable cause hearing was held on September 15, 2021, and the trial court continued the temporary orders. Doc. 17.

{¶4} On October 14, 2021, Kimberly filed a motion to dismiss the complaint or, in the alternative, to hold the complaint in abeyance while Kimberly was seeking treatment for her addiction. Doc. 21. A hearing was held on this motion on December 3, 2021. Doc. 57. Following the hearing, the trial court denied Kimberly's motion. Doc. 57.

{¶5} On January 14, 2022, the Guardian Ad Litem ("GAL") filed his report. Doc. 60. The GAL noted that even though Kimberly and James had five scheduled visits with G.R., they had only attended two of the visits. Doc. 60. Both Kimberly and James were requested to execute a HIPAA medical release. Doc. 60. James did so, but dated it in the year 2019. Doc. 60. The GAL noted that although Kimberly and James' home was clean, had running water, and food in the refrigerator, it had safety hazards. Doc. 60. James indicated that he wished to have G.R., as well as his other child, returned. Doc. 60. The GAL noted that G.R. had present physical problems making her a special-needs child. Doc. 60. The GAL was concerned that Kimberly and James did not appreciate the extent of those needs. Doc. 60. The GAL recommended that temporary custody of G.R. remain with the Agency. Doc. 60.

{¶6} The adjudication hearing was held on December 13, 2021, January 7, 2022, and January 21, 2022. Doc. 64. At the hearing, the Agency presented the

following testimony. Dr. Johnson-Davis ("Johnson-Davis") testified that she is the medical director at the ARUP Laboratories in Utah. Tr. 14. The lab tested a sample taken from a baby born to Kimberly in September 2021. Tr. 19. The meconium specimen presented a positive result for buprenorphine, norbuprenorphine, amphetamine, and methamphetamine. Tr. 20. The umbilical cord tissue also tested positive for those substances. Tr. 20. Johnson-Davis identified buprenorphine as a substance given to pregnant women to substitute for other opioids they might take and norbuprenorphine as a metabolite of buprenorphine. Tr. 24.

{¶7} On cross-examination, Johnson-Davis admitted that she had not participated in the actual testing, but was just reading from the charts. Tr. 22. She also admitted that she had not checked to make sure the proper procedures were actually followed by the staff member who did the testing. Tr. 23. Johnson-Davis also testified that she did not know if the hospital had properly stored, packaged, or transported the samples prior to the testing by the laboratory. Tr. 26.

{¶8} Jenni Zaika ("Zaika") testified that she is an ongoing caseworker with the Agency. Tr. 32-33. Zaika testified that she was familiar with Kimberly and James from a prior child who was removed from the home due to the parents' substance abuse issues in October 2019. Tr. 35. Both Kimberly and James admitted to having substance abuse issues at that time, but James did not admit to being addicted. Tr. 38. In addition to the substance abuse issues, Kimberly alleged that she was the victim of "extreme domestic violence" at the hands of James. Tr. 39.

Kimberly and James frequently had round open sores on them, which in Zaika's experience are seen in methamphetamine users. Tr. 41. James denied drug usage, but admitted to having hepatitis C. Tr. 41. Zaika observed the visits of Kimberly and James with G.R.'s sibling and had concerns then about their abilities to care for a child. Tr. 42. Kimberly became easily frustrated and James did not interact much, though his visits were by zoom and the child was very young. Tr. 43. After a year, Zaika recommended that legal custody of the child be given to a third party, which was done. Tr. 44. Kimberly had not addressed her substance abuse issues at the conclusion of the prior case. Tr. 46. James had also not resolved the issues that led to the removal of the child from the home by the conclusion of that case. Tr. 46-47. On cross-examination, Zaika admitted that she had no contact with James since October of 2020 and that the only evidence of the alleged domestic violence was Kimberly's statements. Tr. 57.

{¶9} Kristine Waldock ("Waldock") testified that she had been an intake worker in October 2019. Tr. 66. The case involving Kimberly and James was opened because the Agency received calls about James adding a substance to the baby's formula and because of Kimberly's and James' conduct at the hospital. Tr. 67. After meeting Kimberly and James, Waldock asked them to submit to a drug test, which came back positive for amphetamines and methamphetamine for both parents along with "Oxy" for James. Tr. 69. At that time, the Agency took custody of the child because the Agency did not "allow parents who are actively using

methamphetamines to reside under [sic] the same home as a child." Tr. 69. After the prior case, Waldock had no contact with Kimberly or James. Tr. 84.

{¶10} Samantha Dotson ("Dotson") testified that she is a Certified Nurse Practitioner working in a pediatric practice. Tr. 91. G.R. is a patient at the practice, brought in by her foster parent. Tr. 92. G.R. was brought in with neonatal abstinence syndrome. Tr. 92. Children with this diagnosis are exposed to a drug in utero that causes the baby to go through withdrawal when born. Tr. 94. Symptoms shown by G.R. include fussiness, feeding problems and loose bowel movements, which were acidic and caused burns to the skin and rectum. Tr. 93. G.R. was also exhibiting signs of myoclonic jerking as a result of the withdrawal. Tr. 96. When G.R. came for her two month visit, she was placed in physical therapy due to her lagging in reaching milestones. Tr. 97. Given all of the symptoms shown by G.R., her prognosis is "poorer than the average child" who was not exposed to drugs. Tr. 99. G.R.'s behavior at two months was not typical which is concerning. Tr. 103.

{¶11} Maggie Tuite ("Tuite") testified that she is an intake worker with the Agency. Tr. 130. Tuite received a report that Kimberly had tested positive for methamphetamines when she gave birth to G.R. Tr. 132. Additionally, the Agency had dependency concerns based upon the removal of G.R.'s sibling in 2019. Tr. 132. When Tuite received the report, she called the hospital to ascertain the wellbeing of G.R. Tr. 134. The report was that G.R. was doing well, but was beginning to show signs of withdrawal. Tr. 134. The next day, Tuite went to the

hospital to see G.R. Tr. 134. Tuite found James holding G.R., who appeared to be clean and was wrapped in a blanket. Tr. 135. She spoke with Kimberly and James and explained why she was there. Tr. 135. Kimberly admitted using methamphetamine the prior Saturday "due to the stress of having the baby and her past case with the Agency." Tr. 135. Tuite informed Kimberly and James that the Agency would be filing for custody of G.R. due to the positive drug test and the past history of the family with the Agency. Tr. 136. Tuite was unable to place G.R. with a relative at that time and had to take into consideration G.R.'s high needs due to withdrawal. Tr. 138. G.R. was transferred from the hospital in Fremont to one in Toledo due to tremors related to the withdrawal. Tr. 139. When Tuite notified Kimberly that G.R. was being transferred to Toledo because of the tremors, Kimberly's response was it happens to every baby. Tr. 141. Tuite testified that she determined the original complaint to be "substantiated." Tr. 144. Kimberly and James did not appeal her findings and the case was transferred to Alicia Mulligan. Tr. 145. On cross-examination, Tuite stated that James was holding G.R. appropriately at the hospital and he did not admit any recent drug usage, instead stating that he was in a treatment program. Tr. 153. James claimed to be working a telehealth program for his drug issues. Tr. 154. However, Tuite noted that James had scabbing on his face, red marks and was sweating even though the room was not warm and no one else was sweating. Tr. 154-55. Based upon Tuite's experience and training, James appeared to be using methamphetamines. Tr. 155. Tuite

testified that James' past use of methamphetamines along with the symptoms shown in the hospital room would raise concerns for her regarding James' ability to care for G.R. Tr. 156. Additionally, both Kimberly and James only visited G.R. at the hospital a couple of times while in Fremont and not at all when G.R. was transferred to Toledo despite being offered assistance to visit. Tr. 161.

{¶12} Alicia Mulligan ("Mulligan") testified that she is the ongoing caseworker employed by the Agency and responsible for this case. Tr. 165. Mulligan spoke with Kimberly about G.R.'s symptoms, but Kimberly did not have "realistic" explanations for what was happening. Tr. 167. Mulligan testified that the home was not suitable for G.R. and that the parents seemed more focused on getting the two other children returned than on what G.R. needed. Tr. 174. Kimberly contacted Mulligan once or twice a month to see how G.R. was doing, but James had not contacted her. Tr. 175. On cross-examination, Mulligan testified that she was able to confirm that Kimberly was obtaining services for mental health and substance use at Firelands. Tr. 177-78. Mulligan admitted that James had no positive drug screens. Tr. 181. Mulligan also admitted that issues with the home were not of immediate concern and could be remedied with G.R. in the home. Tr. 182-83. Mulligan testified that she has "an associate's degree in social work of chemical dependency" and based on her training, she believed both Kimberly and James are using methamphetamine. Tr. 190.

{¶13} Dr. Iracema Arevalo ("Arevalo") testified that she was a pediatrician with the ProMedica System of hospitals, working at the hospital in Fremont. Tr. 216, 218. Arevalo was the doctor who looked after G.R. after she was born. Tr. 219. Arevalo ordered the "urine toxicology, meconium, and cord for toxicology." Tr. 220. The toxicology screen of the cord was positive for buprenorphine, norbuprenorphine, amphetamine, and methamphetamine. Tr. 221. The test of the meconium was only positive for amphetamine, not methamphetamine. Tr. 226. The urine toxicology screen was positive for amphetamine and methamphetamine. Tr. 229. At birth, G.R. was showing no signs of withdrawal, but within a short time, she began to show several symptoms, which required her to be transferred to a higher care facility in Toledo. Tr. 221-25. Arevalo also testified that in utero exposure to methamphetamine may cause permanent developmental disabilities. Tr. 236.

{¶14} After considering all of the testimony presented over the three days of hearings, the trial court on February 7, 2022, found by clear and convincing evidence that G.R. was an abused, neglected, and dependent child. Doc. 64. The trial court then granted temporary custody of G.R. to the Agency. Doc. 64. On February 25, 2022, Kimberly filed a notice of appeal. Doc. 69. James filed his notice of appeal on March 2, 2022. Doc. 78. The following assignments of error are raised on appeal.

**Kimberly's First Assignment of Error**

**The trial court erred when the trial court erred [sic] when it denied [Kimberly's] motion to hold the complaint in abeyance pursuant to [R.C. 2151.26].**

**Kimberly's Second Assignment of Error**

**The trial court erred when it failed to grant [Kimberly's] motion for continuance.**

**Kimberly's Third Assignment of Error**

**The trial court erred in admitting into evidence exhibits that were not provided to counsel prior to the hearing.**

**James' First Assignment of Error**

**The finding that G.R. is a dependent child pursuant to [R.C. 2151.04(C) and (D)] is against the manifest weight of the evidence.**

**James' Second Assignment of Error**

**The finding that G.R. is an abused child pursuant to [R.C. 2151.031(B), (C), and (D)] is against the manifest weight of the evidence.**

**James' Third Assignment of Error**

**The finding that G.R. is a neglected child pursuant to [R.C. 2151.03(A)(2) and (4)] is against the manifest weight of the evidence.**

**James' Fourth Assignment of Error**

**The finding that G.R. is an abused, neglected and dependent child should be reversed because [James] was denied effective assistance of counsel.**

## James' Fifth Assignment of Error

**The finding that G.R. is an abused, neglected, and dependent child should be reversed because the trial court erred in admitting the toxicology report and DJFS report from related case without adequate foundation and reliability.**

*Motion to Hold the Complaint in Abeyance or Dismiss*

{¶15} Kimberly alleges in her first assignment of error that the trial court should have held the complaint in abeyance pursuant to R.C. 2151.26.

**(B) A public children services agency shall not file a complaint pursuant to section 2151.27 of the Revised Code regarding a newborn solely because the newborn's mother used a controlled substance while pregnant if the mother did all of the following:**

**(1) Before the end of the twentieth week of pregnancy, enrolled in a drug treatment program provided by a provider of addiction services or alcohol and drug addiction services;**

**(2) Successfully completed the program or is in the process of completing the program and is in compliance with the program's terms and conditions as determined by the program;**

**(3) Maintained her regularly scheduled appointments and prenatal care recommended by her health care provider for the remaining duration of her pregnancy.**

R.C. 2151.26.

{¶16} Kimberly alleges that she enrolled in a treatment program before the 20th week of her pregnancy, was in the process of completing the program when G.R. was born, and had maintained her prenatal care during the pregnancy. Kimberly asserts that evidence to support these claims was presented at the hearing on her motion on December 3, 2021. A review of the record shows that no transcript

of the December 3, 2021, hearing was provided to this Court. "The appellant bears the burden of producing an adequate record on appeal, including any transcript required to evaluate the assignments of error." *In re Predmore*, 187 Ohio App.3d 100, 2010-Ohio-1626, ¶ 33, 931 N.E.2d 181 (3d Dist.). When this burden is not met, we are required to presume regularity of the trial proceedings. *Id*.

{¶17} The trial court entered findings of fact regarding the hearing on the motion to dismiss. Doc. 57. In these findings, the trial court noted that Kimberly was in a treatment program at Great Lakes Physicians Clyde, Ohio starting September 10, 2020, but did not successfully complete the program. Doc. 57 at 4. Kimberly failed 14 of the 17 drug screens administered while she was in the program. Doc. 57 at 4. The estimated conception date of G.R. was November 2020. Doc. 57 at 4. Although Kimberly was not compliant with the program, she was not discharged. Doc. 57 at 5. When Kimberly learned of her pregnancy, she obtained prenatal care with Tiffin Mercy OBGYN. Doc. 57 at 5. Testimony was presented that Kimberly failed to maintain her regularly scheduled appointments and follow through with the prenatal care. Doc. 57 at 5. Due to Kimberly missing multiple appointments, she was discharged from care at the end of May 2021. Doc. 57 at 5. Kimberly did not seek other care for her pregnancy until August of 2021 when she saw a doctor with Promedica in Fremont. Doc. 57 at 5. Kimberly then did not maintain her appointments or follow the recommendations of the doctor. Doc. 57

at 5-6. To mandate that a complaint not be filed, the mother must have 1) enrolled in the program before the 20th week of her pregnancy, 2) at least be in the process of completing the program and in compliance with the terms and conditions of the program, **AND** 3) maintain regularly scheduled appointments and follow prenatal care recommendations of the health care provider. R.C. 2151.26 (emphasis added). Based upon the factual findings of the trial court, Kimberly was enrolled in the program before she was 20 weeks pregnant. However, Kimberly was not making progress in the program and had failed to maintain her scheduled prenatal appointments or follow the advice of her doctors. Thus, the mandates of R.C. 2151.26(B) do not apply to Kimberly.[1] Kimberly's first assignment of error is overruled.

*Motion for Continuance*

{¶18} Kimberly argues in her second assignment of error that the trial court erred by denying her motion for a continuance of the adjudication. "Continuances shall be granted only when imperative to secure fair treatment for the parties." Juv.R. 23. The denial of a motion for a continuance is reviewed under an abuse of discretion standard.

> **A decision by the trial court to deny a motion for continuance is within the sound discretion of the trial court and should not be reversed absent a showing of abuse of that discretion. * * * In**

---

[1] Kimberly points to the discretionary option of the trial court to hold the complaint in abeyance set forth in R.C. 2151.26(C)(1). This section does not apply here because it is for mothers who have passed the 20 week mark of their pregnancies before enrolling in a program. Kimberly was in the program prior to her pregnancy, so the appropriate section is R.C. 2151.26(B).

> **evaluating the discretion of a lower court, a reviewing court must be circumspect. The fact that the reviewing court might reach a different conclusion than did the lower court does not establish abuse of discretion. \* \* \* Rather, the reviewing court must demonstrate that the lower court's exercise of discretion was "not justified by, and clearly against, reason and the evidence; \* \* \* such action must plainly appear to effect an injustice to the appellant."**

*In re Distafano*, 3d Dist. Seneca No. 13-06-14, 2006-Ohio-4430, ¶ 11 quoting *In re Miller*, 3d Dist. Auglaize No. 2-04-02, 2004-Ohio-3023, ¶ 7. "The term 'abuse of discretion' refers to a decision that is 'arbitrary, unreasonable, or unconscionable.'" *In re J.E.*, 3d Dist. Marion No. 9-17-07, 2017-Ohio-8272, ¶ 12, 100 N.E.3d 151. In ruling on a motion for a continuance, the trial court should consider 1) the length of the delay requested, 2) prior continuances requested and granted, 3) inconvenience to other parties, witnesses, counsel, and the court, 4) the reason the delay is requested, 5) whether the party contributed to the reason for the request, and 6) any other relevant factors. *In re J.D.*, 3d Dist. Hancock No. 5-10-34, 2011-Ohio-1458, ¶ 45. "Furthermore, the complaining party 'must show how he was prejudiced by the denial of the continuance before there can be a finding of prejudicial error.'" *In re M.B.*, 4th Dist. Pike No. 18CA888, 2018-Ohio-3778, ¶ 21 quoting *State v. Broom*, 40 Ohio St.3d 277, 288, 533 N.E.2d 682 (1988)

{¶19} A review of the record in this case shows that the first day of the adjudication hearing was on December 13, 2021. Neither Kimberly nor James were present at the hearing. Tr. 5-6. Counsel for Kimberly informed the trial court that

she was ill and requested a continuance, but did not indicate for how long.[2]  Tr. 6.

The Agency opposed the motion as it had expert witnesses present to testify.  Tr. 8.

The Agency also noted that Kimberly had a history of missing hearings in the prior

case.[3]  Tr. 8.  The trial court denied the motion finding that Kimberly had notice of

the hearing and had provided no documentation verifying her illness.  Tr. 9.  The

record shows that Kimberly requested a continuance on September 9, 2021 for the

probable cause hearing and this request was granted.  Doc. 17.  The witnesses

scheduled to testify on December 13 were the director of the medical lab in Utah,

two former employees of the Agency, and a nurse practitioner who was providing

care for G.R.[4]  All of these witnesses had taken time out of their schedules to be

present for the hearing.  Both Kimberly and James were represented by counsel at

the hearing and the witnesses were cross-examined by counsel, reducing the

potential for prejudice.  *In re J.D., supra.*  Given the information before it at that

time, the trial court did not abuse its discretion in denying the motion to continue

the hearing.  Kimberly's second assignment of error is overruled.

---

[2] No reason was given for James not appearing.

[3] Although it was not available for consideration by the trial court at the time of its ruling, this Court notes that Kimberly and James were two hours late for the second day of the adjudication hearing on January 7, 2022, and participated via zoom because Kimberly allegedly tested positive for COVID via a home test on January 21, 2022.

[4] The Agency did have the ongoing caseworker testify that she had not heard from either Kimberly or James about why they were not at the hearing.  She also testified that an employee of the Agency went to their home that morning to check on them, but no one answered the door.

*Admission of Evidence*

**{¶20}** Kimberly claims in her third assignment of error that the trial court erred by allowing the admission of Exhibit 4, Zaika's activity logs from the prior case, and Exhibit 7, Waldock's activity logs, when they had not been provided to counsel before the hearing. James raises a similar claim in his fifth assignment of error where he argues the trial court erred by admitting Exhibit 2, the toxicology report, and Exhibit 4. The decision to admit or exclude evidence is within the broad discretion of the trial court and will be upheld on appeal unless it affects a substantial right or is "inconsistent with substantial justice." *Beard v. Meridia Huron Hosp.*, 106 Ohio St.3d 237, 2005-Ohio-4787, ¶ 20, 834 N.E.2d 323.

**{¶21}** Kimberly alleges that the trial court erred by admitting Exhibit 7. Both Kimberly and James allege that the trial court erred by admitting Exhibit 4. The basis for their assignments of error are that the Agency did not provide counsel with a copy of the documents to review prior to the beginning of the hearing. "If at any time during the course of the proceedings it is brought to the attention of the court that a person has failed to comply with an [order granting discovery], the court may grant a continuance, prohibit the person from introducing in evidence the material not disclosed, or enter such other order as it deems just under the circumstances." Juv.R. 24(C). Although there was no motion to compel discovery filed, the rule does provide guidance as to the appropriate remedy when documents are not disclosed prior to trial.

{¶22} A review of the record shows that the Agency moved to admit Exhibit 4 at the end of the December 13, 2021 hearing. Tr. 62. Counsel for James objected to the admission on the grounds he had not received a copy of the activity log prior to the hearing. Tr. 62-63. The Agency then withdrew the motion to admit the document to allow counsel time to review the document. Tr. 63. At the conclusion of the January 7, 2022 hearing, the Agency moved to admit Exhibits 4 and 7. Tr. 203-204. The Agency argued that since a few weeks had passed since the last hearing, counsel for James and Kimberly had been given time to review the documents. Tr. 204. Counsel for Kimberly and James both objected to the admission of the documents on the grounds that the Agency had failed to disclose the documents prior to the beginning of the hearing on December 13, 2021. Tr. 204. The trial court admitted the documents over their objections. Tr. 204.

{¶23} Kimberly and James argue that the untimely disclosure of the exhibits should have prohibited their admission. However, Juvenile Rule 24(C) provides that if a person fails to provide discovery as ordered[5], then the trial court may grant a continuance, exclude the evidence, or enter any other remedy it deems appropriate. Here, the Agency withdrew the motion until after the next hearing date, which was 25 days later, to allow Kimberly and James time to review the documents alleged to have been missing. This result is no different than if the trial court had granted a

---

[5] No order compelling discovery pursuant to Juv.R. 24(B) was made in this case.

continuance to Kimberly and James to give them time to review the material. The Supreme Court of Ohio has held that the failure to disclose material prior to trial is only reversible error when 1) it is willful, 2) knowledge before the trial would have benefitted the preparation of the defense, and 3) prejudice was suffered. *State v. Joseph*, 73 Ohio St.3d 450, 458, 1995-Ohio-288, 653 N.E.2d 285. The record contains no evidence that the lack of prior notice was willful. Knowing the details of the prior case would not have aided the defense much since both Kimberly and James were fully aware of the details from the prior case and counsel was aware that there was a prior case where a sibling was removed. Finally, there is no evidence that prejudice resulted from the admission as the witnesses who identified the exhibits also testified that there was a prior case in which an older sibling was removed from Kimberly and James' care. Thus, the trial court did not abuse its discretion in allowing the admission of the documents. Kimberly's third assignment of error is overruled.

{¶24} James also challenges the admission of the toxicology report (Exhibit 2) in his fifth assignment of error. The basis of the argument is that the report was admitted without a proper foundation. The rule setting forth the requirements for the authentication and identification of evidence is Evidence Rule 901.

> **(A) General Provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.**

**(B) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:**

**(1) Testimony of witness with knowledge. Testimony that a matter is what it is claimed to be.**

Evid.R. 901.

**{¶25}** The record shows that Johnson-Davis testified that she is the director of the lab and is responsible for ensuring that the lab is following the testing guidelines of the lab. She was able to testify to the procedures that were used and identified the toxicology report as a business record kept by the lab. Johnson-Davis was able to testify that if there were issues with the samples, the result would likely be a false negative, not a false positive. Tr. 28. Although she did not perform the tests and did not gather the specimens, those issues raise questions of credibility, not admissibility. Thus, she was able to authenticate the document because she was able to identify it as being what it was claimed to be.

**{¶26}** Even if the document was excluded, the medical records of G.R. while in the hospital (Exhibit 11) were admitted without objection. The exhibit noted that G.R. was "affected by maternal use of opiate" and was suffering from "neonatal abstinene symptoms". Ex. 11. The records note that Kimberly used methamphetamines prior to delivery and Kimberly admitted it. Ex. 11. The records also noted that the urine and meconium of G.R. were positive for amphetamines.

Ex. 11. Since the evidence contained in exhibit 2 was also found in exhibit 11, any alleged error would be harmless. James' fifth assignment of error is overruled.

*Manifest Weight of the Evidence*

**{¶27}** James claims in his first, second, and third assignments of error that the trial court's judgment is against the manifest weight of the evidence. When reviewing a judgment to determine if it is against the manifest weight of the evidence, an appellate court "review[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Mendoza*, 137 Ohio App.3d 336, 738 N.E.2d 822 (3d Dist. 2000). See, also, *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). The party seeking the adjudication bears the burden of establishing by clear and convincing evidence that the child is dependent, abused, or neglected. *In re S.L.*, 3d Dist. Union Nos. 14-15-07, 14-15-08, 2016-Ohio-5000, ¶ 43, 56 N.E.3d 1026. A reviewing court should presume that the findings of the trial court are correct and a mere disagreement over the credibility of witnesses or evidence is not a sufficient reason to reverse the judgment. *S.L., supra.*

**{¶28}** James first claims that the trial court erred in finding G.R. to be a dependent child. A "dependent child" is defined as any child

-20-

**A) Who is homeless or destitute or without adequate parental care, through no fault of the child's parents, guardian, or custodian;**

**(B) Who lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian, or custodian;**

**(C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship;**

**(D) To whom both of the following apply:**

**(1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.**

**(2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household.**

R.C. 2151.04.

**{¶29}** A review of the record shows that G.R.'s older sibling was removed from the home and adjudicated a dependent child in October 2019. Ex. 6. James and Kimberly even agreed to this finding. Ex. 6. The reasons listed in the complaint for this child were that the parents were not properly caring for the child and were both actively using methamphetamines. Ex. 5. In October of 2020, legal custody of that child was given to a third party because James and Kimberly were still actively using drugs and had not addressed the mental health and domestic violence

concerns. Ex. 3. The conditions which led to the removal of the sibling in 2019 and the grant of legal custody in 2020 were still an issue when G.R. was born in September 2021. Kimberly was still testing positive for methamphetamines and neither Kimberly or James provided proof that they had addressed the conditions which caused the removal of the older sibling. The testimony of Tuite was that even though James claimed he was not using methamphetamines, his appearance indicated he was still using. Mulligan and the GAL both provided evidence indicating that Kimberly and James' home was not appropriate for an infant. Given all of this evidence, the trial court's finding that G.R. was a dependent child is not against the manifest weight of the evidence. James' first assignment of error is overruled.

{¶30} In his second assignment of error, James claims that the finding that G.R. is an abused child is against the manifest weight of the evidence. An "abused child" is defined as any child who, because of an act of a parent, suffers physical injury that harms or threatens to harm the child's health or welfare. R.C. 2151.031(D). "When a newborn child's toxicology screen yields a positive result for an illegal drug due to prenatal maternal drug abuse, the newborn is, for purposes of R.C. 2151.031(D), per se an abused child." *Huffman v. Eachus*, 3d Dist. Seneca No. 13-18-32, 2019-Ohio-910, ¶ 32 quoting *In re Baby Boy Blackshear*, 90 Ohio St.3d 197, 2000-Ohio-173, 736 N.E.2d 462, paragraph one of the syllabus.

{¶31} Here, Kimberly admitted to using methamphetamines while pregnant. G.R.'s toxicology screen showed a positive result for methamphetamines and G.R. showed symptoms of withdrawal after birth. Dotson testified that G.R.'s prognosis was worse than that of the average child due to her in utero exposure to drugs. Given this evidence, the trial court could reasonably conclude that G.R. suffered physical injury due to the actions of a parent. Thus, the trial court's conclusion that G.R. was an abused child is not against the manifest weight of the evidence. James' second assignment of error is overruled.

{¶32} James claims in his third assignment of error that the trial court's finding that G.R. was a neglected child was against the manifest weight of the evidence. A "neglected child" is any child

**(1) Who is abandoned by the child's parents, guardian, or custodian;**

**(2) Who lacks adequate parental care because of the faults or habits of the child's parents, guardian, or custodian;**

**\* \* \***

**(6) Who, because of the omission of the child's parents, guardian, or custodian, suffers physical or mental injury that harms or threatens to harm the child's health or welfare;**

R.C. 2151.03(A). The issue of which parent causes the neglect is irrelevant to the question of whether a child is neglected. *In re Barnhart*, 4th Dist. Athens No. 05CA8, 2005-Ohio-2692. As discussed above, Kimberly admitted to using methamphetamines while pregnant and there were multiple positive drug screens

during her pregnancy. Her failure to stop using drugs and to follow the recommendations of her doctors providing the prenatal care caused G.R. to suffer physical injury. Additionally, testimony was presented that both James and Kimberly failed to regularly visit G.R. while in the hospital and both seemed more concerned with getting their prior child returned than in what was happening with G.R. Neither had completed a drug treatment program to try and resolve the problems that caused the removal of G.R.'s older sibling. Based upon this evidence, the trial court's determination that G.R. was a neglected child was not against the manifest weight of the evidence. James' third assignment of error is overruled.

*Ineffective Assistance of Counsel*

**{¶33}** James argues in his fourth assignment of error that he was denied the effective assistance of counsel.

> **In evaluating whether a petitioner has been denied effective assistance of counsel, this court has held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done."** *State v. Hester* **(1976), 45 Ohio St.2d 71, 74 O.O.2d 156, 341 N.E.2d 304, paragraph four of the syllabus. When making that determination, a two-step process is usually employed. "First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness."** *State v. Lytle* **(1976), 48 Ohio St.2d 391, 396–397, 2 O.O.3d 495, 498, 358 N.E.2d 623, 627, vacated on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154.**

> **On the issue of counsel's ineffectiveness, the petitioner has the burden of proof, since in Ohio a properly licensed attorney is presumably competent.** *See Vaughn v. Maxwell* (1965), 2 Ohio St.2d 299, 31 O.O.2d 567, 209 N.E.2d 164; *State v. Jackson*, 64 Ohio St.2d [107] at 110–111, 18 O.O.3d [348] at 351, 413 N.E.2d [819] at 822.

*State v. Calhoun*, 86 Ohio St.3d 279, 289, 1999-Ohio-102, 714 N.E.2d 905. "The failure to prove either 1) a substantial violation or 2) prejudice caused by the violation makes it unnecessary for a court to consider the other prong of the test." *State v. Walker*, 2016-Ohio-3499, 66 N.E.3d 349, ¶ 20. "To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95. "The prejudice inquiry, thus, focuses not only on outcome determination, but also on 'whether the result of the proceeding was fundamentally unfair or unreliable.'" *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180 quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

{¶34} James claims that his counsel was ineffective for not renewing his motion for a continuance on the second day of the hearing. Initially, this Court notes that as to the motion for a continuance, this Court has already ruled that the denial of the motion did not prejudice Kimberly or James. Since there was no prejudice in the denial, there could not be prejudice in the failure to renew the objection.

**{¶35}** James also claims that counsel was ineffective for not objecting to the trial court's decision to have James and Kimberly participate via zoom after Kimberly tested positive for COVID. Under the U.S. and the Ohio Constitutions, a party has a right to confront witnesses against them. *State v. Banks*, 1st Dist. Hamilton No. C-200395, 2021-Ohio-4330.

> **"The Confrontation Clauses were written into our Constitutions '*to secure for the opponent the opportunity of cross-examination*. The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers.'" (Emphasis in original.) *Id.*, quoting 5 Wigmore, Evidence 150, Section 1395 (1974).**

*Banks, supra* at ¶ 16. However, the Confrontation Clause does not apply to dependency, neglect, or abuse cases, as they are civil in nature. *In re R.R.*, 5th dist. Stark No. 2021CA00011, 2021-Ohio-2369, ¶ 17. Even if the Confrontation Clause did apply, it does not guarantee an absolute right to a face-to-face meeting at trial. *Banks*. at ¶ 19. This right must be balanced against the consideration of public policy and the necessities of the case. *Id.* The Ohio Supreme Court had determined that "[d]uring this public-health emergency, a judge's priority must be the health and safety of court employees, trial participants, jurors, and members of the public entering the courthouse." *In re Disqualification of Fleegle*, 161 Ohio St.3d 1263, 2020-Ohio-5636, 163 N.E.3d 609 ¶ 8. A trial court may limit the face-to-face aspect of the hearing to prevent the spread of COVID-19. *Banks*, *supra* at ¶ 25.

{¶36} Here, Kimberly tested positive for COVID and because James lived with her, he was quarantining as well. To accommodate James and Kimberly, the trial court permitted them to watch the proceedings via zoom on the same screen and provided each of them the ability to text their separate attorneys any questions or comments they wished to convey. Counsel for both Kimberly and James were present at the hearing and were able to cross-examine each witness. Additionally, Kimberly testified on her own behalf, though James chose not to do so. The record shows that both had the opportunity to participate in the hearing and could communicate privately with their individual counsel. James does not point to anything specific in the record to demonstrate that he was unable to participate fully in the hearing. Given all of the evidence before this Court, we do not find that counsel erred and caused James to be denied the effective assistance of counsel. James' fourth assignment of error is overruled.

{¶37} Having found no errors prejudicial to the appellants in the particulars assigned and argued, the judgment of the Court of Common Pleas of Seneca County, Juvenile Division, is affirmed.

*Judgment Affirmed*

**ZIMMERMAN, P.J. and MILLER, J., concur.**

**/hls**