[Cite as *In re A.D.*, 2023-Ohio-2442.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

IN RE:

    A.D.,                                CASE NO.  13-22-12

ADJUDGED DEPENDENT CHILD.

[SAMANTHA B. - APPELLANT]          O P I N I O N
[MASON D. - APPELLANT]

Appeal from Seneca County Common Pleas Court
Juvenile Division
Trial Court No.  22250011

**Judgment Affirmed**

**Date of Decision:  July 17, 2023**

APPEARANCES:

    *Andrew R. Schuman* **for Appellant, Stephanie B.**

    *Olivia A. Myers* **for Appellant, Mason D.**

    *Victor H. Perez* **for Appellee, Seneca Co. DJFS**

Case No. 13-22-12

**ZIMMERMAN, J.**

{¶1} Mother-appellant, Samantha B. ("Samantha"), and father-appellant, Mason D. ("Mason") (collectively "parents"), appeal the September 6, 2022, judgment entry of the Seneca County Common Pleas Court, Juvenile Division, granting legal custody of their child, A.D., to Mandy B. ("Mandy") and James B. ("James") (A.D.'s maternal grandparents). For the reasons that follow, we affirm the judgment of the trial court.[1]

{¶2} On March 4, 2022, the Seneca County Department of Job and Family Services (the "Agency") filed a complaint alleging A.D., who was born in 2021, to be an abused, neglected, and/or a dependent child. With the complaint, the Agency filed a motion requesting that the trial court grant emergency-temporary custody of A.D. to her maternal grandparents. The trial court granted the request *ex parte*.

{¶3} Thereafter, the trial court appointed a Guardian Ad Litem ("GAL") for A.D. on March 7, 2022.

{¶4} At the March 8, 2022 shelter-care hearing, the parents consented to a finding of probable cause. Thereafter, trial court determined that probable cause existed that A.D. was an abused, neglected, and dependent child, and that it was in

---

[1] Notably, the record reveals that Samantha was married to "Austin" at the time that she conceived A.D., but was divorced at the time that A.D. was born. Because the trial court's record does not contain a divorce decree or information related to whether the establishment of paternity was rebutted by Mason under R.C. 3111.03 prior to the trial court's order for genetic testing, we cannot glean from the record whether Austin should have been served as a party to this action.

A.D.'s best interest to be placed in the temporary custody of her maternal grandparents. The trial court further found that the Agency had made

> *reasonable efforts* as required by law to prevent the placement and removal of the child from the home and/or to make it possible for the child to remain in the home.

(Emphasis added.) (Doc. No. 15).

{¶5} At the adjudicatory hearing held on April 21, 2022, the Agency and the parents entered into an agreement wherein the parents admitted that A.D. was a dependent child in exchange for dismissal of the abuse and neglect allegations. Thereafter, the trial court found A.D. to be a dependent child under R.C. 2151.04(C) and dismissed the remaining allegations in the complaint.

{¶6} Prior to the dispositional hearing, Samantha privately retained counsel who filed an *entry of appearance* and a demand for discovery on April 29, 2022.[2] Then, on May 13, 2022, Mason privately retained counsel who filed her *notice of appearance*, a request for discovery, a motion for legal custody, and a motion to continue disposition.[3] That same day, Samantha filed a second request for

---

[2] That entry of appearance also included a statement demanding discovery. However, it did not contain a certificate of service. (*Id.*). Notably, it did contain a statement identifying the names of the persons served and the manner of service; nonetheless, it failed to identify a date of service or the mailing and email addresses of the persons served. Moreover, the entry was not sent to Samantha's existing counsel of record.

[3] Even though Mason's new attorney's notice of appearance did contain a certificate of service, it did not serve his existing counsel of record who had not yet requested leave to withdraw or been permitted to withdraw with the consent of the juvenile court. *See* Juv.R. 4(D), (F). *See also* Seneca Co. Loc.R. 3.01(A) and 3.02(A) (regarding notices of appearance and substitution or withdrawal of counsel).

discovery, a praecipe for service of a subpoena, a motion for legal custody, and a motion to continue the dispositional hearing.

{¶7} On May 16, 2022, the magistrate issued several magistrate's orders denying Samantha's and Mason's requests for a continuance and Samantha's praecipe requesting that the trial court issue a subpoena.[4]

{¶8} Then, on May 17, 2022, Samantha filed a *corrected* praecipe with an attached subpoena and a motion to set aside the magistrate's order denying her continuance. The trial court denied Samantha's motion to set aside the magistrate's order, and issued her subpoena.

{¶9} Mason filed a motion to compel discovery on May 18, 2022, which the trial court denied.[5] Additionally, Mason filed a motion for production of audio recordings and/or transcripts of all prior and future proceedings held in the instant case. The trial court denied his request.[6]

{¶10} Following the dispositional hearing on May 19, 2022, the magistrate issued his magistrate's decision on June 2, 2022, recommending that A.D. be placed in the legal custody of her maternal grandparents finding that the Agency had made

---

[4] All motions for continuance were denied because counsel failed to comply with the Local Rules of Court for the Seneca County Juvenile Court and because those motions were not timely filed. In addition, Samantha's praecipe did not comport with the Rules of Civil Procedure, and thus no subpoena was issued.
[5] The record supports that discovery had already been provided to Mason's existing attorney who had not requested leave to withdraw.
[6] The motion was denied because of yet another failure to comply with the Local Rules of Court for the Seneca County Juvenile Court. However, the trial court gave Mason's counsel information regarding how to make arrangements with the Clerk of Court to listen to the recorded hearings.

*reasonable efforts* to eliminate A.D.'s continued removal from the home or make it possible for her to return home safely. Moreover, the magistrate recommended the establishment of child-support orders for both parents and the termination of the case plan.

{¶11} Samantha filed her objections to the magistrate's decision on July 25, 2022, and Mason filed his objections on August 2, 2022.

{¶12} On August 5, 2022, the Agency filed a motion for temporary child support under R.C. 2151.33 and R.C. 3119 *et seq.* Samantha objected to the Agency's request for temporary support. Nonetheless, the trial court granted the Agency's request and issued interim-child-support orders for the parents with an effective date of March 3, 2022. The support orders were based upon imputed income to both parents.

{¶13} Ultimately, the trial court overruled the parents' objections to the magistrate's decision on September 6, 2022, granted legal custody of A.D. to her maternal grandparents and found that the Agency had made reasonable efforts to eliminate A.D.'s continued removal from the home or make it possible for her to return home safely. The trial court also established child-support orders for the parents consistent with the magistrate's recommendation.

{¶14} The parents jointly filed a notice of appeal and a joint merit brief with the following nine assignments of error.

**Parents' Assignment of Error No. 1**

**The juvenile court erred by denying procedural and substantive due process to appellants and awarding legal custody to the maternal grandparents.**

**Reference: June 2, 2022 Judgment Entry, and Magistrate's Decision, and Sept. 6, 2022 Judgment Entry. Note: all subsequent assignments of error have the same record references.**

**Parents' Assignment of Error No. 2**

**The magistrate erred by denying appellants' motion to compel discovery when the Seneca County Department of Job and Family services willfully failed to provide discovery prior to the dispositional hearing.**

**Parents' Assignment of Error No. 3**

**The juvenile court violated the provisions of the United States and Ohio Constitution against self-incrimination by requiring the parents to admit criminal misconduct to retain custody of their own child.**

**Parents' Assignment of Error No. 4**

**The juvenile court erred by denying appellants' motion to continue the dispositional hearing where counsel had recently been retained, discovery had not been completed, paternity had not been established, most others consented to the request, and their left adequate time to hold disposition within the statutory time limit.**

**Parents' Assignment of Error No. 5**

**The juvenile court erred by establishing an order of child support where there was no evidence presented as to the parent's [sic] income and/or financial circumstances.**

**Parents' Assignment of Error No. 6**

**The juvenile court erred by granting the motion to place the child in the legal custody of maternal grandparents where the evidence adduced at the hearing demonstrated that it was not in the child's best interest and where the parents had not been given an opportunity to work the case plan, despite its goal of reunification.**

**Parents' Assignment of Error No. 7**

**The juvenile court erred by denying appellants' motions to withdraw their admissions to dependency where the magistrate did not allow counsel to place on the record the reasons for the motions and where appellants received ineffective assistance of counsel at the time of the adjudication.**

**Parents' Assignment of Error No. 8**

**The report and investigation of the GAL were deficient and prejudicial to appellants.**

**Parents' Assignment of Error No. 9**

**Appellants were denied effective assistance of counsel at the adjudication hearing by appointed attorneys, who advised them to admit dependency, which newly retained counsel sought to remedy by moving to withdraw the previously made admissions.**

{¶15} For ease of discussion, we will address the assignments of error out of order starting with the second assignment of error.

**Parents' Assignment of Error No. 2**

**The magistrate erred by denying appellants' motion to compel discovery when the Seneca County Department of Job and Family services willfully failed to provide discovery prior to the dispositional hearing.**

{¶16} In their second assignment of error, the parents' argue that the magistrate erred by denying their motions to compel discovery. Specifically, the parents' assert that the Agency willfully failed to provide discovery to them, and thus the magistrate should have compelled the Agency to comply.

*Standard of Review*

{¶17} We review a juvenile court's decision regarding discovery issues for an abuse of discretion. *In re Freed Children*, 3d Dist. Hancock Nos. 5-08-37, 5-08-38, 5-08-39, and 5-08-40, 2009-Ohio-996, ¶ 46 (citations omitted). An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Analysis*

{¶18} Juv.R. 24 is the mechanism by which a party may request discoverable material provided that such material is not confidential, not privileged, or not in the possession of a third party. However, Juv.R. 22 requires that motions for discovery must be heard *before* the adjudicatory hearing. *See* Juv.R. 22(D)(4). Discovery motions must be made seven days before the (adjudicatory) hearing or 10 days after the appearance of counsel, whichever is later. *See* Juv.R. 22(E). Nevertheless, a juvenile court may extend the time for filing such a motion "in the interest of justice". *Id.*

**{¶19}** Importantly, Mason and Samantha had already received discovery from the Agency (through their counsel of record) prior to the adjudicatory hearing. However, when the parents privately retained new counsel on April 29 and May 13, 2022, new demands for discovery were made. Nevertheless, even if we assume without deciding that that the parents were *not* outside of the time period contemplated by Juv.R. 22(E) when they requested discovery *anew*, and if we further assume without deciding that the parents were not at fault by delaying the release of their original files to their new counsel, the record is clear that neither the Agency nor the parents' prior attorneys ever possessed the materials that the parents new counsel was seeking (i.e., a copy of the search warrant requested by law enforcement; photographs taken by law-enforcement officers during their execution of the search warrant; any genetic-test results that *may* exist relative to law-enforcement's investigation, and written and recorded statements that *may* have been made by the parents during law-enforcement interviews). (*See* May 19, 2022 Tr. at 15). Thus, based upon our review, we do not conclude that the magistrate abused its discretion by denying a motion to compel discovery under the circumstances presented in this appeal.

**{¶20}** Accordingly, the parents' second assignment of error is overruled.

**Parents' Assignment of Error No. 9**

**Appellants were denied effective assistance of counsel at the adjudication hearing by appointed attorneys, who advised them**

**to admit dependency, which newly retained counsel sought to remedy by moving to withdraw the previously made admissions.**

**{¶21}** In their ninth assignment of error, the parents' argue that they were denied the effective assistance of counsel at adjudication.

*Standard of Review*

**{¶22}** The statutory right to counsel is guaranteed in juvenile-court proceedings involving neglect, abuse, or dependency under R.C. 2151.352. *See also* Juv.R. 4(A). Additionally, the right to counsel "'also arises from the guarantees of due process and equal protection contained within the'" Ohio Constitution and Constitution of the United States. *In re J.C.*, 10th Dist. Franklin Nos. 22AP-259 and 22AP-260, 2023-Ohio-778, ¶ 28 citing *In re Brooks*, 10th Dist. Franklin Nos. 04AP-164, 04AP-165, 04AP-201, and 04AP-202, 2004-Ohio-3887, ¶ 24, citing *State ex rel. Heller v. Miller*, 61 Ohio St.2d 6 (1980), paragraph two of the syllabus. This right includes the right to the effective assistance of counsel. *In re I.R.*, 8th Dist. Cuyahoga No. 11040, 2021-Ohio-3103, ¶ 83; *In re D.L.S.*, 3d Dist. Hancock Nos. 5-15-04 and 5-15-05, 2015-Ohio-2809, ¶ 34, citing *In re Moore*, 3d Dist. Hardin No. 6-03-05, 2003-Ohio-4250, ¶ 28 and *In re Brooks* at ¶ 24. "[W]e apply the same test as the test for ineffective assistance of counsel in criminal cases announced in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, [2064] [] (1984), and adopted by the [] Supreme Court [of Ohio] in *State v. Smith*, 17 Ohio St.3d 98, 100 [] (1985). *In re D.L.S.* at ¶ 34, citing *Moore* at ¶ 29.

**{¶23}** To establish ineffective assistance of counsel, the represented party must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the party, i.e., a reasonable probability that but for counsel's errors, the outcome would have been different. *Strickland*, 466 U.S. at 669, 694, 104 S.Ct. at 2068, 2054-2056; *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraphs two and three of the syllabus; *In re I.R.* at ¶ 84. "[R]easonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694, 104 S.Ct. at 2068.

*Analysis*

**{¶24}** Here, the parents argue that their court-appointed attorneys were deficient because they failed to review discovery *provided by the parents* before advising the parents to admit to the dependency allegation in the complaint at adjudication. (*See* Appellant's Brief at 31).

**{¶25}** As to the first prong of the analysis of ineffective assistance of counsel, the parents fail to identity (in their merit brief) what information was provided *by the parents* that the attorneys failed to review. Further, the parents fail to assert how that information would have resulted in a dismissal of *all* the allegations in the Agency's complaint. Moreover, the parents have failed to show how they were prejudiced under the second prong.

**{¶26}** Thus, the parents are unable to show how their attorneys were deficient or how they were directly prejudiced failing to satisfy both prongs of *Strickland*. *See In re H.M.*, 3d Dist. Logan Nos. 8-18-46, 8-18-47, 8-18-55, and 8-18-56, 2019-Ohio-3721, ¶ 110.

**{¶27}** Accordingly, the parents' ninth assignment of error is overruled.

**Parents' Assignment of Error No. 7**

**The juvenile court erred by denying appellants' motions to withdraw their admissions to dependency where the magistrate did not allow counsel to place on the record the reasons for the motions and where appellants received ineffective assistance of counsel at the time of the adjudication.**

**{¶28}** In their seventh assignment of error, the parents' argue that the magistrate erred by denying their *oral* request to withdraw their admissions (to A.D. being a dependent child) made at the dispositional hearing. Specifically, the parents argue that their admissions were not voluntary, intelligent, and knowing in violation of Juv.R. 29(D).

*Standard of Review*

**{¶29}** We review a trial court's substantial compliance with Juv.R. 29(D) as to a parents' admission to dependency at adjudication under a *de novo* standard of review. *In re Etter, et al.*, 134 Ohio App.3d 484 (1st Dist. 1998).

*Analysis*

**{¶30}** In juvenile-court proceedings involving a complaint filed under R.C. 2151.27, Juv.R. 29(C) requires that each party may either admit or deny the allegations in the complaint. Juv.R. 29(D) sets forth how the juvenile court is to proceed upon an admission. Under division (D), if an admission is made, the juvenile court may refuse to accept that admission and must not accept the party's admission *unless* the juvenile court addresses each party entering an admission personally and determines both of the following:

> (1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;
>
> (2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing.
>
> The court may hear testimony, review documents, or make further inquiry, as it considers appropriate, or it may proceed directly to the action required by division (F) of this rule.

Juv.R. 29(D).

**{¶31}** Here, the appellants do not specify which portion of Juv.R. 29(D) the magistrate failed to comply with (at adjudication) nor do they cite to the adjudicatory-hearing transcript to support their contention. On the contrary, the parents assert that they were prevented (at disposition) from placing their arguments

on the record by the magistrate.[7] As such, appellant's have presented no basis to support this assignment of error. In our review of the record, we conclude that the magistrate did not prevent the parents counsel from arguing that they should be permitted to withdraw their admissions; rather the magistrate merely requested counsel produce legal authority regarding why the admission could be withdrawn in light of their written waiver made at the adjudicatory hearing. (May 19, 2022 Tr. at 16-19).

**{¶32}** Here, the record supports that the parents' attorneys were not able to present any legal authority (in support of withdrawing their admissions), and requested additional time to brief the issue. (*Id.* at 17-18). Furthermore, the juvenile court did not grant the attorneys' request to brief the issue because it was under a statutory-time constraint as to disposition. Thus, the parents' argument that they were *prevented* by the magistrate from creating a record is without merit.

**{¶33}** Further, the parents predicated their argument upon a claim of ineffective assistance of counsel. However, it is unclear from our reading of their merit brief, whether ineffective assistance is founded upon the discovery material provided by the parents under their ninth assignment of error or the failure to receive discovery from law-enforcement's criminal investigation under their second

---

[7] The parents did not file a written motion to withdraw their admissions prior to the dispositional hearing, and their attorneys orally raised their motions moments before the dispositional hearing was scheduled to begin. *See* Juv.R. 19.

assignment of error. Nevertheless, it is not our job to seek out and make appellants' argument for them. Thus, given our prior determinations, the ineffective assistance of counsel claim is wholly without merit under the argument presented.

{¶34} Notwithstanding our determinations in this case, the record simply does not establish an error in the acceptance of the parents' admissions sufficient to render those admissions and subsequent adjudication of dependency void.

{¶35} Accordingly, the parents' seventh assignment of error is overruled.

### Parents' Assignment of Error No. 4

**The juvenile court erred by denying appellants' motion to continue the dispositional hearing where counsel had recently been retained, discovery had not been completed, paternity had not been established, most others consented to the request, and their left adequate time to hold disposition within the statutory time limit.**

{¶36} In their fourth assignment of error, the parents argue that the magistrate erred by denying their motions to continue the dispositional hearing. Specifically, the parents argue that they requested a continuance to allow their new attorneys the opportunity to review discovery and prepare for disposition.

*Standard of Review*

{¶37} We review a trial court's decision to grant or deny a motion for continuance for an abuse of discretion. *See In re G.R.*, 3d Dist. Seneca No. 13-22-03, 2022-Ohio-3779, ¶ 18. As we previously stated above, an abuse of discretion refers to a decision of the trial court that is unreasonable, arbitrary, or

unconscionable.  *Blakemore*, 5 Ohio St.3d at 219.  *See also In re J.E.*, 3d Dist.

Marion No. 9-17-07, 2017-Ohio-8272, ¶ 12.

*Analysis*

**{¶38}** Juv.R. 23 provides that "[c]ontinuances shall be granted only when

imperative to secure fair treatment for the parties."  In ruling on a motion for a

continuance, the juvenile court in an abuse, neglect, and dependency case should

balance several considerations including:  1) the length of the delay requested; 2)

prior continuances requested and granted; 3) inconvenience to other parties,

witnesses, counsel, and the court; 4) the reason the delay is requested; 5) whether

the party contributed to the reason for the request; and 6) any other relevant factors.

*See In re J.D.*, 3d Dist. Hancock No. 5-10-34, 2011-Ohio-1458, ¶ 45, quoting *In re*

*T.C.*, 140 Ohio App.3d 409, 417 (3d Dist. 2000), quoting *State v. Unger*, 67 Ohio

St.2d 65, 67-68 (1981).  "Furthermore, the complaining party 'must show how he

[or she] was prejudiced by the denial of the continuance before there can be a finding

of prejudicial error.'"  *In re M.B.*, 4th Dist. Pike No. 18CA888, 2018-Ohio-3778, ¶

21 quoting *State v. Broom*, 40 Ohio St.3d 277, 288 (1988).  Indeed, the Supreme

Court of Ohio has recognized that:

> [t]here are no mechanical tests for deciding when a denial of a
> continuance is so arbitrary as to violate due process. The answer must
> be found in the circumstances present in every case, particularly in the
> reasons presented to the trial judge at the time the request is denied.

*Unger* at 67, quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 8 S.Ct. 841, 850 (1964). "Weighed against any potential prejudice to [the parents] are concerns such as a court's right to control its own docket and the public's interest in [effectuating the purposes articulated by the General Assembly as set forth in R.C. 2151.01]." *Id.*

{¶39} We begin by addressing the parties' history of continuances, the length of the requested delay, and inconvenience. Indeed, the parents had not previously requested a continuance of the juvenile-court proceedings. However, the parents' attorneys failed to advise the juvenile court how much time was needed for them to come up to speed regarding dispositional issues. To us, the lack of a prior continuance weighs in favor of granting the motion. However, the failure of counsel to specify the time needed weighs against the continuance.

{¶40} Next, we turn to the rationale for the delay. The parents requested a continuance because they had not received *full* discovery, and that they were not prepared for the dispositional hearing. However, because we have concluded that discovery had been completed (in the second assignment of error) we conclude a continuance was not warranted under the discovery argument.

{¶41} The parents further argue that they were awaiting genetic-test results relative to paternity, and continuance was necessary. Specifically–the parents are asserting that since paternity had not been established their continuance request should have been granted. Notably, Mason *never* challenged paternity. At all times

relevant, Mason held himself out to be A.D.'s natural and biological father, notwithstanding, that a presumption of paternity under R.C. 3111.03(A)(1) *may* have existed as to a parent and child relationship between "Austin" and A.D.

{¶42} Nevertheless, for the sake of argument, even if we assume without deciding that the magistrate did err by recommending the establishment of a child-support order for Mason prior to the establishment of a parent and child relationship between he and A.D., the parents suffered no prejudice since the genetic-test results led to the establishment of a parent and child relationship between Mason and A.D. *prior to* the issuance of the juvenile court's independent review reflected in the judgment entry overruling their objections to the magistrate's decision. *See* R.C. 2151.23 *compare with* R.C. 2151.231 and R.C. 3111.111. Indeed, "[a] magistrate's decision is not effective *unless* adopted by the court[]" and regardless of "[w]hether or not objections are timely filed, a court may adopt or reject a magistrate's decision in whole or in part, with or without modification. A court may hear a previously-referred matter, take additional evidence, or return a matter to a magistrate." (Emphasis added.) Juv.R. 40(D)(4)(a) and (b). Thus, the juvenile court was permitted to consider the establishment of paternity *after the fact*. Hence, this factor weighs in favor of denying the continuance and demonstrates that the parents have suffered no prejudice.

**{¶43}** Next, we consider whether the parents have contributed to the reason for the continuance request. Samantha's new attorney *entered his appearance* in the record on April 29, 2022. However, he did not properly request discovery for approximately two weeks and less than a week before the dispositional hearing (i.e., on May 12, 2022). Mason's new attorney *entered her appearance* and requested discovery on May 13, 2022. The record supports that none of the certificates of service in the parents' attorneys' appearances or motions included *all* counsel of record. Thus, the parents' existing attorneys may not have been aware that they hired new counsel until that counsel made direct contact on May 16, 2022. Moreover, the parents tarried in hiring their chosen counsel and then sought material in the hands of a third party (i.e., law enforcement) through their various motions filed in juvenile court. Hence, any delay in the parents' new attorneys obtaining their original files (which included the discovery previously provided by the Agency) from prior counsel is attributable to the parents and not the Agency, the magistrate, or their existing attorneys. As such, this factor weighs in favor of denying the continuance.

**{¶44}** We also consider, as a unique factor relevant to this case, that the juvenile court had a statutory-time constraint as to disposition. The Agency's complaint alleging that A.D. was neglected, abused, and dependent was filed on March 4, 2022. Consequently, the 90-day-statutory deadline for disposition was

June 2, 2022. *See* Juv.R. 34(A). The juvenile court had approximately nine business days (excluding weekends and holidays) to elect to permit *post-adjudication* discovery and to reschedule a hearing involving potentially six different attorneys where discovery had already been exchanged and the attorneys had not yet sought leave to withdraw nor had the magistrate consented to permit withdrawal. *See* Juv.R. 4(F). Here, we note that control of the juvenile court's schedule is left within the sound discretion of the juvenile court. *See Wilson v. Wilson*, 3d Dist. Union No. 14-03-16, 2003-Ohio-4474, ¶ 7. Moreover, the juvenile court must balance the *substitution of counsel* and the continuance request against its authority to control its own docket as well as its awareness that such a request may be utilized to delay the proceedings or trifle with the court. *See State v. Ames*, 3d Dist. Allen No. 1-19-02, 2019-Ohio-2632, ¶ 22.[8]

**{¶45}** We further consider, as another unique factor relevant to this case, that a continuance would likely not have changed the outcome of the case based upon the facts of this case. *In re J.E.*, 3 Dist. Marion No. 9-17-07, 2017-Ohio-8272, ¶ 14. Notwithstanding the parents' desire to reunify with A.D. and their compliance with

---

[8] *See also* Seneca Co. Loc.R. 3.02(A) ("Unless otherwise ordered, the substitution or withdrawal of a trial attorney shall be permitted only upon filing with the Juvenile Court, and service on all other parties, a Notice of Substitution of Trial Attorney signed by the withdrawing attorney, the client, and a substitute trial attorney; or upon written application for substitution or withdrawal served upon the client and showing of good cause and upon such terms as the Juvenile Court shall impose. Unless otherwise ordered, a trial attorney shall not be permitted to withdraw at any time later than twenty (20) days in advance of a trial or the setting of a hearing on any motion. Unless otherwise ordered, the substitution of a trial attorney shall not serve as a basis for postponement of a trial or any hearing.")

case-plan services, they simply were not able to remedy the conditions that led to A.D.'s removal from their home since the "alleged perpetrator" of her severe and questionable injuries was never identified and neither parent came forward to explain the circumstances surrounding her injuries. *See In re Hogan*, 3d Dist. Allen No. 1-01-141, 2002-Ohio-1770, *4 ("the fact that no one has come forward to identify E[.H.]'s abuser makes it more likely that abuse will persist because there is no evidence that the person who perpetrated this vicious attack will not again have access to the child.").

{¶46} Upon our consideration of the factors above, we do not conclude that the trial court abused its discretion by denying the parents' continuance requests.

{¶47} Accordingly, the parents' fourth assignment of error is overruled.

**Parents' Assignment of Error No. 8**

**The report and investigation of the GAL were deficient and prejudicial to appellants.**

{¶48} In their eighth assignment of error, the parents argue that the GAL's investigation and report were deficient resulting in prejudice to the parents.[9] Specifically, the parents' contend that the GAL failed to speak with either parent or to observe their interactions with A.D. at their supervised visitations, prior to recommending that the juvenile court grant legal custody to the maternal

---

[9] Although the parents include the GAL's report in their assignment of error, they raise no argument related to that report in their merit brief, and consequently we will not address any issue related to that report under Sup. R. 48.06.

grandparents. Thus, the parents argue that they were prejudiced because had the GAL spoke with them or observed them with A.D., the GAL's recommendation may have changed.

*Standard of Review*

{¶49} "Appellate courts will not reverse trial court decisions to admit a guardian ad litem's testimony and recommendation unless the trial court abused its discretion." *In re T.C.*, 6th Dist. Lucas No. L-15-1106, 2015-Ohio-3665, ¶ 20, citing *Corey v. Corey*, 2d Dist. Greene No. 2013-CA-73, 2014-Ohio-3258, ¶ 9. An abuse of discretion connotes that the decision of the trial court is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

*Analysis*

{¶50} The parents support their position by directing us to Sup. R. 48(D)(13) and *Hunter-June v. Pitts*, 12th Dist. Butler No. CA2013-09-178, 2014-Ohio-2473. However, the Rules of Superintendence for the Courts of Ohio have been amended several times since *Hunter-June* was released, and thus, Sup. R. 48(D)(13) does not currently exist. Nonetheless, new Sup. R. 48.03 was adopted January 1, 2021, and sets forth the general responsibilities of a GAL under division (A) and the duties of GAL under division (D). Moreover, Sup. R. 48.03(D)(2) requires a GAL to "[o]bserve the child with each parent * * *" and division (D)(6) requires that the GAL "[i]nterview the parties".

**{¶51}** At the dispositional hearing, the GAL testified that the parents' prior attorneys instructed her not speak with their clients (i.e., the parents) since there was an ongoing criminal investigation. Further, the GAL testified (at the dispositional hearing) that she was never authorized to speak to the parents *by their new attorneys*. Moreover, the GAL testified that she had been unable to observe the parents supervised visitations with A.D. since they had only recently commenced visitations, and that she had scheduling conflicts.

**{¶52}** Irrespective of the foregoing, we recognize that a failure to comply with Sup.R. 48.03 is not reversible error. *See In re K.L.*, 11th Dist. Portage No. 2021-P-0022, 2021-Ohio-3080, ¶ 63 ("the failure to comply with the Rules of Superintendence, even if a technical error, is not reversible"); *In re E.W., J.W., and J.W.*, 4th Dist. Washington Nos. 10CA18, 10CA19, and 10CA20, 2011-Ohio-2123, ¶ 12 (superintendence rules are internal housekeeping rules that do not create any substantive rights); *Pettit v. Pettit*, 12th Dist. Fayette No. CA2011-08-018, 2012-Ohio-1801, ¶ 12 (superintendence rules are "administrative directives only, and are not intended to function as rules of practice and procedure"); *accord In re R.P. Jr.*, 10th Dist. Franklin Nos. 20AP-538, 20AP-539, 20AP-540, 20AP-542, 20AP-543, and 20AP-544, 2021-Ohio-4065, ¶ 31; *State v. Clark*, 9th Dist. Medina No. 20CA0020-M, 2021-Ohio-3397, ¶ 39; *State v. Klayman*, 4th Dist. Hocking No. 17CA13, 2018-Ohio-3580, ¶ 17; *see State ex rel. Parker Bey v. Byrd*, 160 Ohio

St.3d 141, 2020-Ohio-2766, ¶ 41, quoting *State v. Singer*, 50 Ohio St.2d 103, 110 (1977) ("'[t]he Rules of Superintendence are not designed to alter basic substantive rights'") (Kennedy, J., concurring in part and dissenting in part).

**{¶53}** Even if that were not the case, under the facts presented, the parents cannot establish that they have suffered any prejudice. Significantly, the parents cannot demonstrate that the juvenile court would have granted them legal custody of A.D., and not the maternal grandparents, if the GAL had spoken with the parents or observed their visitations with A.D., because they withdrew their legal custody motions prior to the magistrate granting legal custody of A.D. to the maternal grandparents.

**{¶54}** Lastly, even though the GAL *recommended* legal custody of A.D. to the maternal grandparents, the juvenile court was not bound by that recommendation. The juvenile court's focus in determining whether to grant legal custody is *the best interest of the child*. Although the juvenile court is assisted in making this determination by considering the information presented by the GAL, which includes the GAL's testimony and recommendation, that testimony and recommendation is not dispositive as to the court's custody determination. The juvenile court is free to exercise its discretion to disregard any portion of the GAL's testimony and recommendation it in its credibility determination. *See* Sup.R. 48.03(D)(11) (stating that a GAL's duties include providing the court with "any

necessary information * * * to make an informed recommendation regarding the best interest of the child.").  Given the nature of the proceedings and the impact of the juvenile court's determination on the lives of the parties and the child, we accord the juvenile court's determinations the utmost respect as to its best-interest and credibility determinations.  *See Trickey v. Trickey*, 158 Ohio St. 9, 13-14.

**{¶55}** For the reasons recited above, we do not say that the trial court abused its discretion by considering the GAL's testimony and recommendation under the circumstances presented in this appeal.

**{¶56}** Accordingly, the parents' eighth assignment of error is overruled.

### Parents' Assignment of Error No.  6

**The juvenile court erred by granting the motion to place the child in the legal custody of maternal grandparents where the evidence adduced at the hearing demonstrated that it was not in the child's best interest and where the parents had not been given an opportunity to work the case plan, despite its goal of reunification.**

**{¶57}** In the parents' sixth assignment of error, the parents argue that the juvenile court erred by awarding legal custody of A.D. to the maternal grandparents. Specifically, the parents assert that they were not been given the opportunity to work the case plan and that legal custody was not in A.D.'s best interest.[10]

*Standard of Review*

---

[10] To the extent that the parents' sixth assignment of error could be construed as a reasonable-efforts challenge, we need not address such an argument since their assignment of error concerns the juvenile court's disposition of legal custody under 2151.353(A) and not the juvenile court's finding that the Agency's made reasonable efforts under R.C. 2151.419.  *See* App.R. 12(A)(1)(b); App.R. 16(A)(3).

{¶58} On appeal, we review the grant or denial of a motion for legal custody under an abuse-of-discretion standard. *In re B.P.*, 3d Dist. Logan Nos. 8-15-07 and 8-15-08, 2015-Ohio-5445, ¶ 21. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

*Legal Custody*

{¶59} Ohio's juvenile courts are statutory entities, and they are able to exercise only those powers that the General Assembly confers on them. R.C. Chapter 2151; *In re Z.R.*, 144 Ohio St.3d 380, 2015-Ohio-3306, ¶ 14. R.C. Chapter 2151 grants a juvenile court exclusive original jurisdiction concerning a child alleged to be abused, neglected, or dependent. *In re S.L.*, 3d Dist. Union No. 14-15-07, 2016-Ohio-5000, ¶ 12. *See also In re J.L.M.*, 9th Dist. Summit No. 28867, 2018-Ohio-2175, ¶ 10, citing *State ex rel. Allen Cty. Children Servs. Bd. v. Mercer Cty. Common Pleas Court, Prob. Div.*, 150 Ohio St.3d 230, 2016-Ohio-7382, ¶ 21; R.C. 2151.23(A)(1); R.C. 2151.27(A)(1); R.C. 2151.33(A); R.C. 2151.353(A)(2).

{¶60} Following an adjudication of an abused, neglected, or dependent child, R.C. 2151.353(A) provides the juvenile court with certain dispositional alternatives for the child. "A juvenile court has broad discretion in [fashioning] the disposition of an abused, neglected, or dependent child." *In re C.W.*, 3d Dist. Wyandot No. 16-09-26, 2010-Ohio-2157, ¶ 10, citing R.C. 2151.353(A) and Juv.R. 29(D). *See also*

*In re L.P.*, 3d Dist. Seneca Nos. 13-12-60 and 13-12-61, 2013-Ohio-2607, ¶ 20; Juv.R. 34(D).

**{¶61}** Among the juvenile court's dispositional alternatives is granting legal custody of the child to a person identified in the complaint or in a motion filed prior to the dispositional hearing. *See* R.C. 2151.353(A)(3); *see also* Juv.R. 34(D). The Revised Code defines "[l]egal custody" to mean

> a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities. An individual granted legal custody shall exercise the rights and responsibilities personally unless otherwise authorized by any section of the Revised Code or by the court.

R.C. 2151.011(A)(21). "[T]he award of legal custody is 'not as drastic a remedy as permanent custody.'" *In re J.B.*, 3d Dist. Allen No. 1-15-79, 2016-Ohio-2670, ¶ 32, quoting *In re L.D.*, 10th Dist. Franklin No. 12AP-985, 2013-Ohio-3214, ¶ 7. Unlike granting permanent custody, the award of legal custody does not divest parents of their residual parental rights, privileges, and responsibilities. *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, ¶ 17. Significantly, the parents can generally petition the court for a custody modification in the future. *In re L.D.* at ¶ 7. Thus, "a parent's right to regain custody is not permanently foreclosed." *In re B.P.*, 2015-Ohio-5445, at ¶ 19, citing *In re M.J.M.*, 8th Dist. Cuyahoga No. 94130, 2010-Ohio-1674, ¶ 12. The Supreme Court of Ohio has held that a finding of parental unfitness is not a

prerequisite to a disposition of legal custody where a juvenile court is making a custody determination under R.C. 2151.353 between a nonparent and parent. *In re C.R.* at ¶ 21. *See also In re M.H.*, 3d Dist. Seneca Nos. 13-13-45 and 13-3-46, 2014-Ohio-1485, ¶ 15 ("[A] trial court is not required to make a separate 'unsuitability' finding at disposition, because an adjudicatory finding that a child is abused, neglected or dependent implicitly contains an unsuitability finding."), citing *In re C.R.* at paragraphs two and three of the syllabus, and *In re Cunningham*, 59 Ohio St. 2d 100, 102 (1979).

{¶62} The standard a juvenile court uses in making its determination in a legal-custody proceeding (by "preponderance of the evidence") is less onerous than a permanent-custody proceeding (by "clear and convincing evidence"). *See In re B.P.* at ¶ 19. "'Preponderance of the evidence' means evidence that is more probable, more persuasive, or of greater probative value." *In re M.G.*, 3d Dist. Allen No. 1-18-54, 2019-Ohio-906, ¶ 7, quoting *In re J.B.*, 3d Dist. Allen No. 1-15-79, 2016-Ohio-2670, ¶ 33, citing *In re C.V.M.*, 8th Dist. Cuyahoga No. 98340, 2012-Ohio-5514, ¶ 7.

{¶63} At a dispositional hearing involving a request for legal custody, the focus is on the best interest of the child. *In re P.S.*, 5th Dist. Stark No. 2012CA00007, 2012-Ohio-3431, ¶ 31, citing *In re C.R.* at ¶ 10; *In re B.P.* at ¶ 19. *See also* R.C. 2151.42(A). R.C. 2151.353(A)(3) does not list specific factors a court

should consider in deciding what is in the child's best interest pursuant to the requested disposition of legal custody. *In re B.P.* at ¶ 20, citing *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23, citing *In re Fulton*, 12th Dist. Butler No. CA2002-09-236, 2003-Ohio-5984, ¶ 11.

**{¶64}** Although, no specific factors must be followed in a case involving the dispositional alternative of legal custody, we have previously concluded that juvenile courts may be guided by the factors listed in R.C. 2151.414(D)(1) (the permanent-custody factors) or R.C. 3109.04(F)(1) (factors employed in private-custody disputes) since they are both purely instructive. *See In re L.P.*, 3d Dist. Seneca Nos. 13-12-60 and 13-12-61, 2013-Ohio-2607, ¶ 22. *See also In re K.B. and G.B.*, 3d Dist. Hancock Nos. 5-20-37 and 5-20-38, 2021-Ohio-3273, ¶ 50.

**{¶65}** In addition to the foregoing factors, the juvenile court must also liberally interpret and construe R.C. Chapter 2151 so as to effectuate the General Assembly's expressed purpose when considering which situation will best promote the child's "care, protection, and mental and physical development," understanding that the child should only be separated from his or her parents "when necessary for the child's welfare or in the interests of public safety." *In re C.W.*, 2010-Ohio-2157, at ¶ 11, citing R.C. 2151.01(A). *See also In re L.P.* at ¶ 21.

**{¶66}** Because the parents' argument involves the Agency's case plan, we also review R.C. 2151.412 since it statutorily mandates "[t]he procedures for the

Case No. 13-22-12

creation and amendment of a case plan." *In re S.D-M.*, 9th Dist. Summit Nos. 27148

and 27149, 2014-Ohio-1501, ¶ 26. R.C. 2151.412 provides in its pertinent parts:

(A) Each public children services agency and private child placing agency shall prepare and maintain a case plan for any child to whom the agency is providing services and to whom any of the following applies:

(1) The agency filed a complaint pursuant to section 2151.27 of the Revised Code alleging that the child is an abused, neglected, or dependent child;

* * *

(G)(1) All case plans for children in temporary custody shall have the following general goals:

(a) Consistent with the best interest and special needs of the child, to achieve a safe out-of-home placement in the least restrictive, most family-like setting available and in close proximity to the home from which the child was removed or the home in which the child will be permanently placed;

(b) To eliminate with all due speed the need for the out-of-home placement so that the child can safely return home.

(2) The director of job and family services shall adopt rules pursuant to Chapter 119. of the Revised Code setting forth the general goals of case plans for children subject to dispositional orders for protective supervision, a planned permanent living arrangement, or permanent custody.

(H) *In the agency's development of a case plan and the court's review of the case plan, the child's health and safety shall be the paramount concern. The agency and the court shall be guided by the following general priorities*:

(1) A child who is residing with or can be placed with the child's parents within a reasonable time should remain in their legal custody

-30-

even if an order of protective supervision is required for a reasonable period of time;

(2) *If both parents of the child* have abandoned the child, have relinquished custody of the child, have become incapable of supporting or caring for the child even with reasonable assistance, *or have a detrimental effect on the health, safety, and best interest of the child, the child should be placed in the legal custody of a suitable member of the child's extended family*;

(Emphasis added.) R.C. 2151.412(A)(1), (G)(1)-(2), (H)(1)-(2).

*Analysis*

{¶67} Here, the parents argue that the juvenile court's disposition of legal custody to the maternal grandparents was not in A.D.'s best interest since disposition was rushed and the parents were given little time to complete the case-plan goals and objectives. In particular, the parents support their argument with four assertions, and we will begin by addressing the parents' first and third assertions that the juvenile court presumptively awarded legal custody to the maternal grandparents and that the maternal grandparents did not understand reunification was the goal of the case plan.

{¶68} Contrary to the parents' assertions, the record does not support that the juvenile court presumptively awarded the maternal grandparents legal custody of A.D. Indeed, both parents filed separate legal-custody motions, which were withdrawn after the Agency rested its case at the dispositional hearing and before the magistrate ruled on the merits of the Agency's request. To us, the juvenile court

had no other legal-custody motion to consider. Thus, it is inconsequential whether the maternal grandparents (as kinship caregivers) understood the goal of the case plan was reunification since they both subsequently executed statements of understanding pursuant to R.C. 2151.353(A)(3)(b), which provides as follows:

> (A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
>
> * * *
>
> (3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings. A person identified in a complaint or motion filed by a party to the proceedings as a proposed legal custodian shall be awarded legal custody of the child only if the person identified signs a statement of understanding for legal custody that contains at least the following provisions:
>
> * * *
>
> (b) That the person understands that legal custody of the child in question is intended to be permanent in nature and that the person will be responsible as the custodian for the child until the child reaches the age of majority. Responsibility as custodian for the child shall continue beyond the age of majority if, at the time the child reaches the age of majority, the child is pursuing a diploma granted by the board of education or other governing authority, successful completion of the curriculum of any high school, successful completion of an individualized education program developed for the student by any high school, or an age and schooling certificate. Responsibility beyond the age of majority shall terminate when the child ceases to continuously pursue such an education, completes such an education, or is excused from such an education under standards adopted by the state board of education, whichever occurs first.

Therefore, these portions of the parents' argument are without merit.

**{¶69}** Next, in the parents' second assertion, they argue that the maternal grandparents expressed reluctance in accepting legal custody of A.D. and were stressed and overwhelmed caring for her. In our review of the record, the maternal grandparents *did not* express reluctance to accept legal custody of A.D. evinced by their statements of understanding and their testimony in open court. Indeed, any *grandparent* (thrust into a position as a kinship caregiver) would be stressed and overwhelmed by the level of care that A.D. requires. Moreover, the grandparents' feelings are exacerbated by the inability to identify a perpetrator or to explain how A.D.'s grisly injuries occurred. Each grandparent testified that they are coping with the certainty that their child (Samantha) along with A.D.'s father (Mason) were the primary caretakers of A.D. when the injuries occurred. Furthermore, they testified that they are aware of the reality that they have become kinship caregivers (likely for the next 18 years) and are experiencing a range of emotions related to changes in their roles as parents and grandparents, their new expectations as caregivers, and their concerns for ensuring A.D.'s continued health and safety. Accordingly, we reject this portion of the parents' argument.

**{¶70}** Lastly, in the parents' fourth assertion, they argue that the juvenile court could not have considered the best interest factors under R.C. 2151.414(D)(1)(a) since the GAL never spoke to the parents nor did she observe

them interacting with A.D. As we highlighted in our resolution of the parents' eighth assignment of error, the supervised visitations between the parents and A.D. had only recently commenced and were in conflict with the GAL's schedule. Furthermore, the GAL had been instructed not to speak with the parents by their attorneys. Indeed, the record reflects that the juvenile court was *guided by* the relevant factors listed in both R.C. 2151.414(D)(1) and R.C. 3109.04(F)(1) specifically determining in its independent review of the magistrate's decision that the "Magistrate properly *considered* the best-interest factors provided under R.C. 2151.414(D) and 3109.04(F)(1)". (Emphasis added.) (Doc. No. 79).

{¶71} Accordingly, we conclude that the juvenile court did not err by granting legal custody to the maternal grandparents.

{¶72} The parents' sixth assignment of error is overruled.

### Parents' Assignment of Error No. 3

**The juvenile court violated the provisions of the United States and Ohio Constitution against self-incrimination by requiring the parents to admit criminal misconduct to retain custody of their own child.**

{¶73} In their third assignment of error, the parents' argue that the juvenile court violated their rights against self-incrimination under the Fifth Amendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution by requiring the parents to admit criminal conduct in order to regain custody of A.D. at disposition.

*Dispositional-Hearing Standard*

**{¶74}** In Ohio, the purpose of the adjudicatory hearing in an abuse, neglect, or dependency case is to determine if the allegations as to the status of the child as "abused, neglected, or dependent" are true thus bringing them under the jurisdiction of the juvenile court. *See* Juv.R. 2(B). *State v. Lowe*, 3d Dist. Logan No. 8-20-36, 2021-Ohio-4563, ¶ 19 (citations omitted). A finding of dependency, as is the case here, places the child within the juvenile court's jurisdiction. *See* R.C. 2151.04; 2151.23. The purpose of the dispositional hearing is to determine what action shall then be taken with respect to the child with a focus on the best interest of the child. *See* Juv.R. 2(M); *In re Baby Girl Baxter*, 17 Ohio St.3d 229, 233. The Supreme Court of Ohio has recognized that "parents who are suitable persons have a 'paramount' right to the custody of their minor children." *In re Murray*, 52 Ohio St.3d 155, 157 (1990). However, parental rights are not absolute and the state has a right to intervene when the exercise of the parent's rights presents a health or safety hazard to a child. *See In re Cunningham*, 59 Ohio St.2d at 106.

*Fifth Amendment Right Against Self-Incrimination*

**{¶75}** "The Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution declare that no person shall be compelled in any criminal case to be a witness against himself." *State v. Arnold*, 147 Ohio St.3d

138, 2016-Ohio-1595, ¶ 30. "[T]he privilege against self-incrimination is accorded liberal construction in favor of the right it was intended to secure." *Id.* at ¶ 31.

**{¶76}** To qualify for the Fifth Amendment privilege, the communication must be testimonial, incriminating, and compelled. *See United States v. Hubbell*, 530 U.S. 27, 34-38, 120 S.Ct. 2037, 2042-2045 (2000). "[I]n order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information". *Doe v. United States*, 487 U.S. 201, 210, 108 S.Ct. 2341, 2347 (1988). "A court may not compel a parent's admission to a crime in custody proceedings, if the admission could be used against the parent in a subsequent criminal proceeding, under the threat of losing parental rights." *In the Matter of A.W.*, 11th Dist. Ashtabula No. 2021-A-0026, 2022-Ohio-1553, ¶ 22, citing *Matter of Ma.H.*, 134 N.E.3d 41, 47 (Ind. 2019), *In re A.D.L.*, 133 Nev. 561, 402 P.3d 1280, 1285 (2017), and *Lefkowitz v. Cunningham*, 431 U.S. 801, 805, 97 S.Ct. 2132, 2135 (1977).

**{¶77}** Here, as we determined in our resolution of the parents' sixth assignment of error, the juvenile court made its custody decision based upon the evidence adduced at the dispositional hearing in furtherance of A.D.'s best interests. Significantly, the parents did not testify at the dispositional hearing, and they did not specifically invoke their rights against self-incrimination. Additionally, the juvenile court did not draw an adverse inference about the parents' guilt based upon

the parents' decision to not to testify at the dispositional hearing. Thus, self-incrimination was never implicated under the facts presented.

**{¶78}** Accordingly, the parents' third assignment of error is overruled.

## Parents' Assignment of Error No. 1

**The juvenile court erred by denying procedural and substantive due process to appellants and awarding legal custody to the maternal grandparents.**

**Reference: June 2, 2022 Judgment Entry, and Magistrate's Decision, and Sept. 6, 2022 Judgment Entry. Note: all subsequent assignments of error have the same record references.**

**{¶79}** In their first assignment of error, the parents' contend that the juvenile court erred by failing to provide them adequate notice and inform them of their right to be present for an *ex parte* emergency hearing conducted on March 4, 2022. Specifically, the parents argue that the juvenile court erred in failing to provide adequate notice and inform them of their right to be present at the *ex parte* emergency hearing.

### *Standard of Review*

**{¶80}** Before adjudication of an abuse, neglect, and dependency complaint, a juvenile court "may make any temporary disposition of any child that it considers necessary to protect the best interest of the child and that can be made pursuant to division (B) of this section." R.C. 2151.33(A); Juv.R. 13(A). "The disposition that is in the best interest of the child is within the sound discretion of the trial court and

will not be reversed upon appeal absent an abuse of discretion." *In re Haywood*, 3d Dist. Allen No. 1-02-97, 2003-Ohio-3518, ¶ 4. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

**{¶81}** Here, in reviewing the record, the parents failed to file a motion to set aside the magistrate's *ex parte* emergency orders. *See* Juv.R. 40(D)(2)(b). Thus, they forfeited any challenge to this order on appeal. As a result, the parents have failed to preserve this error for appeal. *See* Juv.R. 40(D)(2)(a)(iii)(F), (D)(2)(b).

**{¶82}** "It is well established that if a party fails to object at the trial court level, that party waives all but plain error". *In re L.L., J.L., and H.M.*, 3d Dist. Logan Nos. 8-14-25, 8-14-26, 8-14-27, 2015-Ohio-2739, ¶ 51, quoting *In re M.R.*, 3d Dist. Defiance No. 4-12-18, 2013-Ohio-1302, ¶ 84. The plain-error doctrine is applicable in civil cases only in the extremely rare case where the error "seriously affects the basic fairness, integrity, or public reputation of the judicial process." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122-123, 1997-Ohio-401.

*Analysis*

**{¶83}** Significant to us, the parents waived a probable-cause hearing (following the magistrate's issuance of the *ex parte* orders) and consented to a finding of probable cause on March 8, 2022. Moreover, the parents did not contest the temporary-custody orders placing A.D. with her maternal grandparents.

Thereafter, the parents entered into an agreement (as to adjudication), admitting A.D. was dependent, thus waiving and stipulating to the findings of the magistrate (in a magistrate's decision).

**{¶84}** Since the parents waived their right to contest the magistrate's temporary-custody orders at shelter-care and adjudicatory hearings, they forfeited the right to raise them now. Moreover, those issues are now rendered moot by the juvenile court's final dispositional order of legal custody and by our determination of the parents' sixth assignment of error concluding that the juvenile court did not err in granting legal custody of A.D. to her maternal grandparents. *See* App.R. 12(A)(1)(c).

**{¶85}** Accordingly, the parents' first assignment of error is overruled.

### Parents' Assignment of Error No. 5

**The juvenile court erred by establishing an order of child support where there was no evidence presented as to the parent's [sic] income and/or financial circumstances.**

**{¶86}** In the parents' fifth assignment of error, the parents argue that the trial court erred by establishing child-support orders. Specifically, they argue that that the maternal grandparents waived the establishment of the child-support orders, and even if that were not so, there was no income and financial information presented at the dispositional hearing in conformity with the Rules of Court for Seneca County Juvenile Court (i.e., Loc.R. 9).

*Standard of Review*

**{¶87}** We review "matters concerning child support" under an abuse of discretion standard. *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989); *see also Winkler v. Winkler*, 10th Dist. No. 02AP-937, 2003-Ohio-2418, ¶ 54. An "'unreasonable, arbitrary or unconscionable'" action by the trial court amounts to an abuse of discretion. *Booth* at 144, quoting *Blakemore*, 5 Ohio St.3d at 219.

*Jurisdiction*

**{¶88}** Juvenile courts in Ohio are created by statute. *See In re D.R.*, ___Ohio St.3d ____, 2022-Ohio-4493, ¶ 38, citing R.C. Chapter 2151 and *In re Z.R.*, 144 Ohio St.3d 380, 2015-Ohio-3306, ¶ 14. Thus, "[j]uvenile courts are courts of limited jurisdiction * * *." *In re S.M.*, 12th Dist. Madison No. CA2009-02-008, 2009-Ohio-4677, ¶ 14, citing *Carnes v. Kemp*, 104 Ohio St.3d 629, 2004-Ohio-7107, ¶ 25; *see also In re D.R.*, 5th Dist. Knox No. 13CA27, 2014-Ohio-588, ¶ 10. As statutory creatures with limited jurisdiction, juvenile courts have "little, if any, inherent power." *In re A.A.C.W.*, 10th Dist. Franklin Nos. 13AP-618 and 13AP-714, 2014-Ohio-2903, ¶ 11[11].

**{¶89}** Significantly, the statutory provisions establishing the jurisdiction of the juvenile court similarly give the juvenile court the authority to issue child-

---

[11] Alternatively captioned as *Welty v. Casper*.

support orders. Particularly, R.C. 2151.23(A)(1) grants the juvenile court exclusive original jurisdiction concerning any child alleged to be an abused, neglected, or dependent child. This exclusive original jurisdiction over a child alleged to be abused, neglected, and/or dependent is exercised under R.C. 2151.27, R.C. 2151.31, and R.C. 2151.33 and related sections.

**{¶90}** Indeed, prior to the final disposition of cases involving an alleged or adjudicated abused, neglected, or dependent child, the juvenile court is mandated to issue a temporary order (pursuant to Chapters 3119 to 3125 of the Revised Code) requiring the "parents, guardian, or person charged with the child's support to pay support for the child."[12]  R.C. 2151.33(B)(2)(a).  *See also* R.C. 2151.36; Juv.R. 13(B)(2)(d).  Importantly, the juvenile court "may issue an order * * * *upon its own motion* or *if a party files a written motion * * *.*"  (Emphasis added.)  R.C. 2151.33(C)(1).  Indeed, A.D. was taken into custody pursuant to section 2151.31 of the Revised Code and placed in the shelter care of the Agency.  *See* R.C. 2151.33(C)(2).  Thereafter, the Agency requested that the juvenile court issue a temporary-child-support order for each parent on August 5, 2022.  Thus, the juvenile court's issuance of court-child-support orders herein under R.C. 2151.33(B)(2)(a) were ancillary to the juvenile court's exclusive original jurisdiction over A.D. as a

---

[12] Even though we recognize that under R.C. 2151.33(B)(2)(b), the juvenile court is directed to issue an order requiring the parents, guardian, or person charged with the child's support to pay support for the child, and also to issue an order requiring the appropriate person or persons to maintain or obtain health insurance coverage, we will not address those provisions since they have not been raised on appeal.

dependent child. *See* R.C. 3119.01(C)(3) (defining a "[c]ourt child support order" to mean "any order issued by a court for the support of a child pursuant to * * * 2151.23, 2151.231, 2151.232, 2151.33 * * * of the Revised Code * * *."). On August 9, 2022 and before the trial court had ruled on the parents' objection to the magistrate's decision, the juvenile court issued a judgment entry granting the Agency's request for a temporary order of child support imputing potential income to both parents.

{¶91} At the dispositional hearing held on May 19, 2022, there was minimal testimony presented regarding the circumstances of the parents' employment. Their ongoing caseworker, Elizabeth Decker, testified that both parents were *employed*. However, no evidence was introduced as to where they were employed and the amounts of the parents' hourly wages. Consequently, the magistrate (in its decision) imputed *potential income* to both parents in the establishment of child-support orders. Ultimately, the juvenile court overruled the parents' objections to the magistrate's decision and issued its judgment entry consistent with the magistrate's recommendation for the establishment of child-support orders by imputing potential income.

{¶92} Here, the parents' argument that the maternal grandparents were not seeking the establishment of child-support orders is inconsequential since the juvenile court is statutorily mandated to establish such orders when the child is

placed in the custody of a third party. *See* R.C. 2151.33(B)(2)(a); 2151.231; R.C. 3119.07(C). Thus, this portion of their argument lacks merit.

**{¶93}** Next, the parents assert that the magistrate failed to comply with Seneca County Juvenile Court's Loc.R. 9, which directs the juvenile court to review documents listed in R.C. 3119.05(A) to establish income before calculating its child-support orders. R.C. 3119.05(A) provides "[t]he parents' current and past income and personal earnings shall be verified by electronic means or with suitable documents, including, but not limited to, paystubs, employer statements, receipts and expense vouchers related to self-generated income, tax returns, and all supporting documentation and schedules for the tax returns."

**{¶94}** While the record does not reflect that the parents submitted the documentary evidence described in R.C. 3119.05(A) or Seneca Co. Loc.R. 9, we note that the parties' income is the starting point for calculating child-support obligations under R.C. 3119 *et seq*. *See* R.C. 3119.01(C)(9). R.C. 3119.01 divides income into two distinct categories: "gross income" of the parent and "potential income". R.C. 3119.01(C)(9)(a) and (b). Both of those terms are statutorily defined under R.C. 3119.01. *See* R.C. 3119.01(C)(12) and (17). R.C. 3119.01 then goes on to define what does and does not constitute "[g]ross income". R.C. 3119.01(C)(12)(a) through (g). Here, the trial court established its child-support orders based upon its imputation of *potential income* to the parents and not their

-43-

*gross income*. Thus, no verification of financial information was required under R.C. 3119.05(A) and derivatively Seneca Co. Loc.R. 9.

**{¶95}** Based on our review of the record, we conclude that the juvenile court did not abuse its discretion by not requiring verification of financial information under R.C. 3119.05(A) (and derivatively Seneca Co. Loc.R. 9) since it imputed *potential income* to the parents and because its determination was not based upon the *gross income* of the parents.

**{¶96}** Accordingly, the parents' fifth assignment of error is overruled.

**{¶97}** Having found no error prejudicial to the appellants herein in the particulars assigned and argued in their assignments of error, we affirm the judgment of the trial court.

*Judgment Affirmed*

**MILLER, P.J. and WALDICK, J., concur.**

**/jlr**