[Cite as *Platt v. Orick*, 2024-Ohio-1537.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

BRADLEY PLATT, ET AL.,

    PLAINTIFF-APPELLEES,

  v.

CASSIE O.,

    DEFENDANT-APPELLANT.

CASE NO. 2-23-11

O P I N I O N

Appeal from Auglaize County Common Pleas Court
Juvenile Division
Trial Court No. 2023-CUS-017

Judgment Affirmed

Date of Decision:  April 22, 2024

APPEARANCES:

    *William E. Huber* for Appellant

    *Craig A. Gottschalk* for Appellees

**WALDICK, J.**

{¶1} Mother-appellant, Cassie O. ("Cassie"), brings this appeal from the October 23, 2023, judgment of the Auglaize County Common Pleas Court, Juvenile Division, awarding legal custody of the minor child, K.O., to Kortnee and Bradley Platt (collectively, "the Platts"). On appeal, Cassie argues that K.O. was unlawfully taken from her in violation of R.C. 2919.23, that the trial court erred by determining that she was, *inter alia*, unstable and unreliable, and that the trial court lacked jurisdiction over the matter. For the reasons that follow, we affirm the judgment of the trial court.

*Background*

{¶2} Cassie is the mother of K.O., who was born in January of 2019. K.O.'s father is unknown.

{¶3} In February of 2023, Cassie left K.O. in the care of Cassie's girlfriend, Jacqueline, and Jacqueline's mother, Shelley, claiming that she needed to go to job orientation at Taco Bell. When Cassie did not retrieve K.O. after multiple days had passed, Shelley asked her other daughter, Kortnee, to take care of K.O. because Shelley had to work. Kortnee had regularly been a babysitter for K.O. in the past and had cared for K.O. for extended periods.

{¶4} On March 8, 2023, after Cassie did not resurface for several weeks, Kortnee and her husband Bradley filed a "Complaint/Motion for Custody" seeking

to be named legal custodians of K.O. The Platts alleged that over the previous 2-3 years K.O. had resided with them sporadically and that K.O. had been in their care continuously since February 23, 2023.

{¶5} The Platts also filed for temporary custody of K.O. The Platts attached an affidavit claiming that they had been "intimately and continuously involved" in raising K.O. for the past 4 years. For example, Kortnee stated that beginning in the fall of 2021, the Platts provided care for K.O. for "at least twenty" hours each day until the Spring of 2022. Kortnee also averred that Cassie was unable to provide for K.O.'s care.

{¶6} Moreover, Kortnee alleged that Cassie had multiple convictions since K.O.'s birth for possession of drug paraphernalia, that Cassie had threatened suicide on multiple occasions, including once with a knife to her throat in front of K.O. Kortnee made numerous other allegations such as Cassie being involved in domestic violence, Cassie being fired from a prior job for drug use, Cassie having drug paraphernalia in the home where K.O. was supposed to reside, and Cassie having mental health issues.

{¶7} Kortnee also noted health concerns for K.O. He was not up-to-date on his vaccinations and he had numerous cavities and issues with his teeth. Kortnee also alleged that after K.O. was with Cassie for some time, K.O. had burn scars on his body.

**{¶8}** Cassie filed a response with an affidavit attached claiming, *inter alia*, that her whereabouts were not unknown because she had lived in a specific apartment for 10 months, that children's services had conducted multiple investigations of her, and all the cases had been deemed unsubstantiated.

**{¶9}** On May 24, 2023, Cassie filed a motion for dismissal arguing that the procedure the Platts were attempting to follow was not established in any revised code section since the Platts were not blood relatives of K.O., since Cassie had never been deemed unfit, and since there was not an open abuse, neglect or dependency case. The Platts responded by citing R.C. 2151.23(A)(2)/(F)(1), which vests jurisdiction for private custody matters in the juvenile court for any child that is not a ward of another court of the state. The trial court filed a written entry summarily denying Cassie's motion to dismiss.[1]

**{¶10}** The case proceeded to a final hearing over multiple dates. The Platts both testified at the final hearing, as did Shelley Wheeler. Cassie testified on her own behalf and presented the testimony of her on-again off-again girlfriend, Jacqueline Wheeler (Shelley's daughter and Kortnee's sister). At the conclusion of the hearing, the trial court had the parties submit written closing arguments.

**{¶11}** On October 23, 2023, the trial court filed a final judgment entry making factual findings and legal conclusions. After reviewing the evidence and the

---

[1] As the case proceeded, the parties agreed that Cassie would have supervised visitation with K.O.

requisite statutes, the trial court determined that Cassie was incapable overall of raising a child. Specifically, the trial court found:

> [Cassie] is mentally unstable, unreliable, has unstable housing, unstable relationships, unstable employment, and has little to no family support. She also is at times suicidal and volatile in her behavior. This is absolutely no environment in which to raise a child.

(Doc. No. 89). Furthermore, the trial court determined that the Platts had proven by a preponderance of the evidence that Cassie's

> custody of the child is and has been detrimental to the child. In addition to Defendant mother's total lack of stability, the child was medically neglected in his lack of vaccinations and especially neglected in his lack of dental care, lack of consistency in food and poorly fitting clothing. The Defendant-mother simply should not have custody of this child or any child. Parenting is a long term, consistent job that takes the utmost attention to detail and care. You cannot disappear, not take care of mental illness, not appropriately feed and care for the child and pawn the child off on others and call yourself a parent. The child deserves more and under ORC sec. 3109.04, these orders are in his best interests.

(*Id.*)

{¶12} In sum, the trial court determined that Cassie was an unsuitable parent for K.O.  The Platts were awarded legal custody of K.O., and Cassie was awarded visitation. Cassie now brings the instant appeal challenging the trial court's judgment, asserting the following assignments of error for our review.

### First Assignment of Error

**The Court erred in allowing a child taken contrary to §2919.23 of the Ohio Revised Code to remain in the custody of individuals who took and illegally withheld the child.**

**Second Assignment of Error**

**The Court erred in it's** [sic] **finding that the Defendant-Appellant/Mother is mentally unstable, unreliable, has unstable housing and unsteady relationships, unstable employment and has little or no family to support her.**

**Third Assignment of Error**

**The Court erred in not following procedure as set up within the Ohio Revised Code and therefore lacked jurisdiction.**

{¶13} As the third assignment of error concerns the trial court's jurisdiction, we will address it first.

*Third Assignment of Error*

{¶14} In her third assignment of error, Cassie argues essentially that the Platts lacked standing to initiate this action, and thus the trial court lacked jurisdiction over the matter. We disagree.

{¶15} In its final entry, the trial court directly addressed Cassie's jurisdictional challenges. With regard to jurisdiction, the trial court determined:

> 2. The juvenile court also has jurisdiction over this matter under ORC sec. 2151.23(A)(2) and 2151.23(F)(1).

The statutory subsections cited by the trial court, R.C. 2151.23(A)(2) and (F)(1), read:

> (A) The juvenile court has exclusive original jurisdiction under the Revised Code as follows:
>
> * * *

(2) Subject to divisions (G), (I), (K), and (V) of section 2301.03 of the Revised Code, to determine the custody of any child not a ward of another court of this state[.]

* * *

(F)(1) The juvenile court shall exercise its jurisdiction in child custody matters in accordance with sections 3109.04 and 3127.01 to 3127.53 of the Revised Code and, as applicable, sections 5103.20 to 5103.22 or 5103.23 to 5103.237 of the Revised Code.

{¶16} A plain, expansive reading of R.C. 2151.23(A)(2) establishes that the juvenile court has jurisdiction to determine the custody of any child, subject to certain divisions in the statute. Cassie argues that the "correct" procedure in this case should have been for the Platts to file a complaint under R.C. 2151.27, which allows any person who believes a child is neglected or dependent to file an appropriate action.

{¶17} Contrary to Cassie's argument, the Supreme Court of Ohio has explicitly held that a "R.C. 2151.23(A)(2) action does not need to comply with R.C. 2151.27 and 2151.353." *In re Perales*, 52 Ohio St.2d 89, 93-94, 369 N.E.2d 1047 (1977). The *Perales* Court held that pursuant to R.C. 2151.23(A)(2), the juvenile court has jurisdiction to determine the custody of a child even though the court has not found the child to be "delinquent, neglected, dependent, etc." *Id*.

{¶18} As R.C. 2151.23(A)(2) and the case authority interpreting it provide jurisdiction here, Cassie's arguments are not well-taken. Therefore, her third assignment of error is overruled.

*First Assignment of Error*

{¶19} In her first assignment of error, Cassie argues that the trial court erred by allowing "a child taken contrary to §2919.23 of the Ohio Revised Code to remain in the custody of individuals who took and illegally withheld the child."

{¶20} Revised Code 2919.23 concerns "interference with custody." It has no relevance to this case because the Platts have not been criminally charged with, or convicted of, a violation of R.C. 2919.23. *See Jones v. Jones*, 12th Dist. Warren No. CA2021-05-045, 2022-Ohio-1986, ¶ 14. Moreover, R.C. 2919.23 is not even factually relevant because Cassie willingly gave K.O. to other caregivers and then absconded. For these reasons, any claims related to a "criminal" violation of R.C. 2919.23 are irrelevant in this juvenile custody matter. Therefore, Cassie's first assignment of error is overruled.

*Second Assignment of Error*

{¶21} In her second assignment of error, Cassie argues that the trial court erred by determining that she was mentally unstable, had unstable housing, unstable employment, and unstable relationships. Essentially Cassie is arguing that the trial court's factual findings were not supported by the evidence.

Standard of Review

{¶22} Custody issues are some of the most difficult and agonizing decisions a trial court judge must make; for that reason, the trial court is given "wide latitude in considering all the evidence." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674

N.E.2d 1159 (1997). "A trial court has broad discretion in proceedings involving the care and custody of children." *In re Mullen*, 129 Ohio St.3d 417, 2011-Ohio-3361, 953 N.E.2d 302, ¶ 14. We review the award of legal custody for an abuse of discretion. *In re A.D.*, 3d Dist. Seneca No. 13-22-12, 2023-Ohio-2442, ¶ 58. An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶23}** Moreover, we must presume that the trial court's findings are correct because the trial court is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Therefore, deferential review in a child custody determination is especially crucial "where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis* at 419, 674 N.E.2d 1159.

Analysis

**{¶24}** At the final hearing, testimony was presented that it was not uncommon for Cassie to "disappear" for days at a time leaving K.O. in care of the Platts or the Wheelers. Kortnee testified that for a nine-month period the Platts cared for K.O. twenty hours per day. Kortnee testified that Cassie was often intoxicated

on marijuana, sometimes on crack cocaine. Cassie's girlfriend Jacqueline testified that Cassie had once offered to relinquish custody of K.O. in exchange for money.

**{¶25}** In addition, testimony was presented that Cassie had mental health issues and had threatened suicide on multiple occasions, including once with a knife to her own throat in front of K.O. Kortnee testified that Cassie once left K.O. in the care of an eight year old autistic child.

**{¶26}** There was testimony presented that Cassie had been fired from jobs for drugs or for poor attendance. Testimony was also presented regarding Cassie's drug use. In fact, videos taken from Cassie's apartment were introduced into evidence depicting drug paraphernalia and suspected crack-cocaine residue. Furthermore, testimony was presented that K.O. had poor nutritional health after being with Cassie, requiring, *inter alia*, over $16,000 in dental work.

**{¶27}** Cassie testified on her own behalf and disputed many of these claims, but the trial court found her testimony not to be credible.

**{¶28}** After considering the evidence in its entirety, the trial court made the following relevant factual findings:

> 4. Ja[c]queline Wheeler and Cassie O[.] have an extremely turbulent relationship. They would live together for times in Jacqueline's parents' house or live independently in their own home. They would separate at times and be together at times. They would also be involved in both verbal abuse and physical abuse causing the police to be involved. These confrontations were often over the Defendant-mother's mental health, drug abuse or theft from Jacqueline and often when the child was present. This was a frequent pattern of behavior.

5. The behavior of the Defendant-mother often involved children service's [sic] involvement but not to the extent of removal as the child was safe when left with other parties. However, children services apparently advised the Wheeler family to seek a private custody action for the minor child. The defendant-mother has a history of unstable housing, unstable employment and unstable relationships.

6. The events that precipitated Kortnee and Bradley Platt to seek custody of the child were that the Defendant-mother left the child with Jacqueline and Shelley Wheeler and then could not be located. When Shelley had to work she asked Kortnee to care for the child. When the Defendant-mother still did not surface, Brad and Kortnee filed their complaint and received orders of temporary custody. During this same time Jacqueline was trying to find Cassie as she had given Cassie her credit card to buy food at McDonald's and she did not return. Jacqueline later found Cassie's car at a place that has been described as a "crack house" in Lima although [Jacqueline] knocked on the door no one there claimed to know anything about Cassie.

7. At all times, Cassie knew the phone numbers and locations of Jacqueline, Shelley and Kortnee but did not attempt contact with any of them or to check on her child nor did she provide her location for them to contact her. The Defendant-mother used the excuse that she should not have to contact Kortnee because she left the child with Jacqueline and it was Jacqueline's responsibility to get the child. This statement is absolutely ludicrous for one that claims to be so concerned for her child. Due to the Defendant-mother's behaviors and demeanor, the Court believed very little of her testimony. She is self admittedly mentally ill although claims to have it under control. She also claims not to have a drug problem but testimony and evidence suggests otherwise. Additionally, at times the Defendant-mother claimed to be suicidal and those claims were made in front of the child on occasion. When questioned concerning the child's father, she claimed he had no father but then stated she did not know the father and could not identify one.

8. The Court also had a difficult time with the testimony of Ja[c]queline. It was apparent in her testimony that she was trying to walk a thin line of keeping her girlfriend happy and not upsetting her parents or her sister.

9. When the child came to the Platt's his condition was very poor. He did not have proper clothing, his vaccinations were way behind and his teeth hurt causing the Platt's to expend $16,000 in dental work for the child and to get his vaccinations caught up.

Based on its factual findings, the trial court determined, *inter alia*, that Cassie was unfit to care for K.O. and an award of custody to her would be detrimental to K.O.

{¶29} Cassie disputes the trial courts findings, particularly the trial court's determinations that her housing, employment and relationships were unstable, but the record contains testimony supporting the trial court's determinations. To dispute the trial court's determinations, Cassie cites her own testimony, but the trial court did not find Cassie's testimony credible. We will not second-guess credibility determinations, particularly in child custody matters.[2] *Logan v. Holcomb*, 3d Dist. Marion No. 9-12-61, 2013-Ohio-2047, ¶ 39.

{¶30} In sum, we find that the trial court's factual determinations in this matter are supported by the evidence. Therefore, Cassie's second assignment of error is overruled.

---

[2] In order to find that the trial court erred, we would have to believe all (or most) of Cassie's testimony, and ignore much of the testimony from the other witnesses. We would further have to ignore the videos taken from Cassie's apartment, which directly undermine her own statements regarding drug use.

*Conclusion*

**{¶31}** Having found no error prejudicial to Cassie in the particulars assigned and argued, her assignments of error are overruled and the judgment of the Auglaize County Common Pleas Court, Juvenile Division, is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and ZIMMERMAN, J., concur.**

**/hls**